## Tyrone and Clearfield Railway Co. *versus* Jones.

1. The plaintiff, a contractor, did work on a railroad in 1857, 1858. Under authority granted in 1857 the company mortgaged their road, &c., in 1859; in 1860 the plaintiff brought suit; in 1866 the road was sold under the mortgage, and in 1867 conveyed to the purchasers, who in same year conveyed to defendants. In 1870 the plaintiff obtained judgment. On a scire facias on the judgment against the defendants under the Acts of January 21st 1843 and April 4th 1862, *Held* that the mortgage was invalid as against the plaintiff, and the defendants, as purchasers under the mortgage, were liable for the judgment.

2. The Act of 1857, authorizing the original company to mortgage their road, &c., did not repeal the protection of the Act of 1843 as to debts for the construction of the road.

3. The Act of 1862 provided a remedy to make the protection effectual.

May 18th 1875.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Centre county:* Of May Term 1875, No. 9.

This was a scire facias, issued February 20th 1871, by John Jones against the Tyrone and Clearfield Railroad Company, with notice to the Tyrone and Clearfield Railway Company, claiming to own the real estate and franchises late of said defendants, and also with notice to the Pennsylvania Railroad Company, claiming to

[Tyrone & Clearfield Railway Co. *v.* Jones.]

hold and occupy the same by lease or otherwise. The writ was served on the terre-tenants, but not on the defendants.

The writ recited, that on the 26th of January 1870, the plaintiff had recovered against the defendants a judgment for $3828.75, and commanded the sheriff to "make known to the aforesaid Tyrone and Clearfield Railroad Company, with notice to the Tyrone and Clearfield Railway Company, claiming to own the real estate and franchises of the said defendant, and also with notice to the Pennsylvania Railroad Company, claiming to hold and occupy the same by lease or otherwise, that they be and appear, &c., * * * to show if anything for themselves they know or have to say, why the judgment aforesaid ought not to be recovered and the lien thereof continued, and why the aforesaid plaintiff ought not to have execution against them of said debt and damages aforesaid?" * * * At the return of the writ the terre-tenants moved that the writ be quashed:—

1. Because it was illegal and unauthorized against them.

2. Because the writ was irregular and insensible, and did not make known to the parties served the facts required by law to be distinctly set forth in the writ.

3. Because the writ *quare ex. non* is not proper under the Acts of Assembly, &c.

The court denied the motion to quash the writ.

The terre-tenants pleaded specially:—

1. That at the time of issuing the scire facias, or before or since, they did not own, and had not in their possession, any real estate, &c., upon which the judgment recited in the scire facias was a lien.

2. That on the 26th of January 1870, when the judgment on which the scire facias was issued was recovered, there was no corporation in existence under the name of the Tyrone and Clearfield Railroad Company, against which the judgment was entered; that in pursuance of law that company had, on the 12th of May 1859, mortgaged all their property, &c., to J. Edgar Thomson, trustee, who, by power under the mortgage, sold out on the 11th of March 1867, and conveyed the Tyrone and Clearfield Railroad, and all the real estate, &c., and franchises of the company, to George B. Roberts and others; and that by reason of this sale and conveyance, the Tyrone and Clearfield Railroad Company ceased to exist as a corporation.

3. Made the same averments as in the 2d, and further, that on the 1st of April 1867, Roberts and others, the purchasers, conveyed the railroad, and all the property and franchises, to the Tyrone and Clearfield Railway Company, a corporation of Pennsylvania.

The case was tried April 30th 1872, before Mayer, P. J.

The plaintiff gave in evidence the record in an action, Jones *v.* Clearfield Railroad Co., brought to April Term 1860. The cause of action, as shown by that record, was work done by plaintiff as a

[Tyrone & Clearfield Railway Co. *v.* Jones.]

contractor in the construction of the road of the defendants; judgment was recovered against the defendants on the 26th of January 1870 for $3928.70 ; this is the judgment on which this scire facias is issued.   They then gave in evidence the mortgage and the sales and conveyances set out in the special pleas, together with the several Acts of Assembly relating to the incorporation of the companies, authorizing the borrowing of money, &c.

The defendants closed.

The court charged that under the Acts of 21st of January 1843, sect. 1, Pamph. L. 368 ; April 4th 1862, sect. 1, Pamph. L. 235, 1 Br. Purd. 90, 91, pl. 1, 6, the plaintiff had a lien that was superior to the mortgage under which the railroad was sold, and instructed the jury to find for the plaintiff against the Tyrone and Clearfield Railway Company only, as it did not appear that the Pennsylvania Railroad Company claimed to hold or own any of the real estate of the Tyrone and Clearfield Railroad Company.

The verdict was for the plaintiff for $4460.08.

The Act of 1843 made it unlawful "for any company, incorporated by the laws of this Commonwealth, and empowered to construct, make and manage any railroad, while the debts and liabilities, or any part thereof, incurred by the said company to contractors, laborers and workmen, employed in the construction or repairs of said improvement, remain unpaid, to execute a general or partial assignment, conveyance, mortgage or other transfer of the real or personal estate of the said company, so as to defeat, postpone, endanger or delay their said creditors, without the written assent of the said creditors first had and obtained ; and any such assignment, conveyance, mortgage or transfer shall be deemed fraudulent, null and void as against such contractors, laborers and workmen, creditors as aforesaid."   The Act of 1862, after reciting that corporations made assignments, &c., in contravention of the Act of 1843, enacted that whenever any corporation, subject to the provisions of that act, should "divest themselves of their real or personal estate, contrary to the provisions of the said resolution, it shall and may be lawful for any contractor, laborer or workman, employed in the construction or repair of the improvements of said company, having obtained judgment against said company, to issue a scire facias upon said judgment, with notice to any person, or to any incorporated company claiming to hold or own said real or personal estate, to be served in the same manner as a summons upon the defendant, if it can be found in the county, and upon the person or the persons, or incorporated company claiming to hold or own such real estate; and if the defendant cannot be found, then upon the return of one nihil and service as aforesaid, on the person or persons, or company claiming to own as aforesaid, the case to proceed as in other cases of scire facias on judgment against terre tenants."

[Tyrone & Clearfield Railway Co. v. Jones.]

The railway company took a writ of error and assigned for error :—

1. Not quashing the writ of scire facias.

2. Deciding that the Act of April 4th 1862, authorized the issuing the writ of scire facias against the Tyrone and Clearfield Railway Company.

3. Sustaining the judgment against the Tyrone and Clearfield Railroad Company, a corporation not then in existence.

4–8. The charge of the court.

*A. Hay* and *Edmund Blanchard* (with whom was *Evan Blanchard*), for plaintiffs in error.—The writ of scire facias to revive and continue a lien and show why execution should not issue is interlocutory, and not on a footing with a scire facias on a mortgage: Edwards' Appeal, 16 P. F. Smith 90; Sinkett *v.* Wunder, 1 Miles 362.   A scire facias to revive a judgment against a terre-tenant cannot be maintained on a judgment on a scire facias against the original lien debtor, obtained after the terre-tenant's title had accrued: Zerns *v.* Watson, 1 Jones 260; Little *v.* Smyser, 10 Barr 383.   A terre-tenant must be a purchaser mediately or immediately, whilst the land is bound by the judgment: Dengler *v.* Kichner, 1 Harris 41; Cahoon *v.* Hollenback, 16 S. & R. 432; Dohner's Assignees, 1 Barr 104.   A scire facias cannot be sustained against a dead corporation: Mumma *v.* Potomac Co., 8 Peters 285; Farmers' & Mech. Bank *v.* Little, 8 W. & S. 207.   The Acts of 1843 and 1862 do not create liens expressly, and implied or latent liens are against the policy of our laws: Kauffelt *v.* Bower, 7 S. & R. 64; Commonwealth's Appeal, 4 Barr 165; Hendrickson's Appeal, 12 Harris 365; Patterson *v.* Forry, 2 Barr 456; Hepburn *v.* Snyder, 3 Id. 78; Hiester *v.* Green, 12 Wright 96; Mann's Appeal, 1 Barr 24; York Bank's Appeal, 12 Casey 458; Smith's Appeal, 11 Wright 128.   The Act of 1843 being in restraint of alienation, must be construed strictly: Dwarris on Statutes 750; Braddee *v.* Brownfield, 2 W. & S. 280.   The power to mortgage, taken away by the Act of 1843, was restored by the Act of April 28th 1857, Pamph. L. 351, and its supplement April 11th 1859, Pamph. L. 494, authorizing the Tyrone and Clearfield Railroad Company to mortgage. When a subsequent affirmative statute introduces a new rule, it repeals a former statute on the same subject-matter by implication: Johnston's Estate, 9 Casey 511; Somerset & S. Road, 24 P. F. Smith 61; Bartlet *v.* King, 12 Mass. 546; King *v.* Cater, 4 Burrows 202; Commonwealth *v.* Cromley, 1 Ashmead 181.   Where there is a repugnancy in two statutes the latter repeals the former *pro tanto:* Opdyke's Appeal, 13 Wright 379; Nusser *v.* Commonwealth, 1 Casey 126.

[Tyrone & Clearfield Railway Co. *v.* Jones.]

*J. A. Beaver* and *J. Macmanus*, for defendant in error.—A scire facias on a judgment is not strictly an action, but a demand for execution: Fries *v.* Watson, 5 S. & R. 220; Morton *v.* Croghan, 20 Johnson's Rep. 106; Clippinger *v.* Miller, 1 Penna. R. 71. The plaintiffs in error appeared to the original suit and were bound by the judgment, and also by the scire facias on it, which was served on them; they appeared and made defence: Himes *v.* Jacobs, 1 Penna. R. 152; Heller *v.* Jones, 4 Binney 61. The lien of the contractor is indefinite in duration: Knorr *v.* Elliot, 5 S. & R. 49; Amer. F. Ins. Co. *v.* Pringle, 2 S. & R. 138.

Judgment was entered in the Supreme Court, May 24th 1875,

PER CURIAM.—Under the resolution of 1843, the mortgage in this case was invalid to affect the debt of the plaintiff. The Act of 1857, authorizing the company to mortgage its road, franchises and property, conferred an authority upon the railroad company to execute the mortgage, but was not a repeal of the protection the resolution of 1843 gave to debts for the construction of the road. The Act of 1862 furnished a remedy to make this protection effectual. The form of the scire facias is not directed by the act. The form adopted was therefore not inappropriate. The opinion of Justice Strong in Fox, Ex'r of Fox, *v.* Seal, Workman and Hughart, Trustees of the Hempfield Railroad Co., decided in the Supreme Court of the United States, is so full and satisfactory, and covers the ground of this case, it is referred to as fully vindicating the decision in this case.[1]                    Judgment affirmed.

[1] Mr. Justice STRONG delivered the opinion of the court.

We think there was error in the rejection of the evidence offered by the plaintiff. Some of it may have been immaterial to the issues pending, but the court directed that all the record and documentary evidence be embraced in one offer, and then rejected it all. In effect the objections urged by the defendants were treated as a demurrer, and the offer was overruled because the evidence was regarded as insufficient in law to sustain the action.

If the rights of the plaintiff have not been lost by failure to prosecute them in the proper mode, and in due time, the joint resolution of 1843, in our opinion, protects him against the mortgage, and all persons claiming thereunder. * * * That the plaintiff's testator was a contractor with the Hempfield Railroad Company, and that the debt due to him was incurred by the company for the construction of their railroad, it was the direct tendency of the evidence offered to prove, and these facts are uncontroverted now. That debt, therefore, was within the protection, whatever that may be, of the resolution. What, then, was the nature and extent of that protection? It is unnecessary to assert that the company was rendered incapable of making a mortgage or any transfer of its property, so long as the debt due to its contractor remained unpaid. But the language of the resolution is too clear to admit of question that the legislature intended to give to an unpaid contractor a priority of claim to the company's property, over every right that could be acquired by a mortgagee, or acquired under a mortgage, if the mortgage was made after the debt to the contractor was incurred. It was at least intended that the property, into whosoever hands it might come, should remain subject to a paramount claim of the contractor so long as the

[Tyrone & Clearfield Railway Co. *v.* Jones.]

debt due to him remained unpaid. That this was substantially giving to him a lien of indefinite duration seems quite plain. It was not a "jus in re," nor a "jus ad rem," but it was a charge upon the property, a right to prevent any disposition of it, by which it could be withdrawn from the creditor's reach, and therefore in a very legitimate sense an equitable lien. The resolution in effect declared that while his claim against the company exists, a subsequent mortgage or transfer cannot be set up to defeat the contractor's resort to the property and his superior right to have it applied to the payment of the debt due him. It is true the mode of that resort is not prescribed. It can only be by suit, judgment and execution, but whenever judgment and execution are obtained, the lien is made to precede the lien of any mortgage or the effect of any conveyance; more accurately, it has the effect it would have were there no mortgage or conveyance in existence. The property may be levied upon and sold, and the proceeds of the sale may be applied to the satisfaction of the debt due the contractor, without possible interference by the mortgagee, though the mortgage preceded the judgment in time. We cannot regard the resolution as no more than a partial re-enactment of the Statute of 13th Elizabeth invalidating mortgages and transfers only when there is an actual or constructive intent to hinder, delay or defraud creditors. If that was all the resolution intended it was unnecessary and unmeaning. But it declares null and void every mortgage *the effect* of which is to defeat, *postpone,* endanger or delay contractors, laborers and workmen. The mortgage may be good as against other creditors, but it is a nullity as to them.

It has been argued that it is against the policy of Pennsylvania to allow secret liens, or liens not of record, or liens on land created by parol, and undoubtedly there are evils attendant upon the allowance of such encumbrances. But that is a matter for legislative consideration. The supposed policy of the state cannot, in a judicial tribunal, prevail over a plain statute. And notwithstanding the disinclination judges have manifested to sustain liens not of record, there are many such liens known to the statute laws of that state and upheld by the courts. A mechanic or material man, is given a lien, and he is not required to put his claim on record until within six months after his work has been done, or his materials have been furnished. Yet his lien has priority over every lien (other than a mechanic's) which attached to the building or curtilage subsequent to the commencement of such building. So liens are given by statutes to laborers, miners and clerks, and they are valid against subsequent mortgages, though the liens do not appear upon any record: Act of March 30th 1859, P. L. 318. It is not, then, against the policy of the state to create a statutory lien in favor of laborers or workmen.

And if we have correctly interpreted the legislative resolution of 1843; if the debt due from the Hempfield Railroad Company to the plaintiff's testator was a lien upon the property of the company from the time it was created, so far, at least, as to have priority over any subsequent mortgage or conveyance, it is plain the lien would have continued a prior encumbrance, so long as the debt it was given to secure remained, had there been no such subsequent mortgage. But the expressed declaration of the resolution is that the mortgage shall have no effect as against such a debt or claim. And this must mean that neither the mortgage itself nor any sale made under it, shall have the effect of defeating, postponing, endangering or delaying the contractor; for if the sale made under the mortgage discharges the contractor's lien and removes the property from his reach, effect is given to the mortgage itself, and precisely the effect which the statute denied to it.

We are thus brought to the question whether the lien or claim which the plaintiff's testator had upon the property, real and personal, of the Hempfield Railroad Company, as a security for the debt due him, and which was paramount to the mortgage made to the company, has been lost or extinguished. And we think it has not. The debt remains due and unpaid. In

29 P. F. SMITH—5

[Tyrone & Clearfield Railway Co. *v.* Jones.]

1855, Richard Fox, the contractor, commenced a suit for its recovery, and he obtained a judgment in 1860. That judgment did not extinguish the right which he had from the time the debt was incurred to have the property of his debtors first applied to the satisfaction of the debt. It did not cause to be merged in itself the original lien, any more than a judgment obtained upon a bond secured by a mortgage absorbs the lien of the mortgage. In whatever shape the debt was it had the benefit of the statutory privilege. It matters not then that more than five years elapsed after the judgment was recovered before it was revived, for if it be conceded that the lien of the judgment expired, that of the debt remained.

And if the lien of the judgment recovered in 1860 ceased at the end of five years from the time of its rendition, still it is undeniable that the revived judgment of 1867 gave a new lien which followed the property into whosoever hands it came, until the present scire facias was sued out in February 1871. The only possible answer to this is that before the revived judgment of 1867 was obtained, the property of the Hempfield Railroad Company had passed from its ownership, had become vested in its mortgagees, and that the trustees of the mortgage were not notified of the scire facias, or made parties to it. To this there are two replications, each of which, in our opinion, is quite sufficient. The first is that the company was, by the resolution of 1843, deprived of the power to make a mortgage or any conveyance by which its property could be withdrawn from the reach of the plaintiff, and the mortgagees or trustees could acquire no rights which the mortgagors were unable to confer. The second replication is that the mortgage to Seal and others was not a grant of the ownership of the property described in it. It was but the creation of a lien for the security of the bonds issued under it. True, the trustees of the bondholders, pursuant to its provisions, took possession of the mortgaged property in 1857, and carried on the business of the company until 1871; but even as against them the company remained the owners of the road, subject only to a lien to secure the payment of the mortgage-debt. The trustees were not terre-tenants, they were mere occupants. Terre-tenants, against whom, by the laws of Pennsylvania, it is necessary that a scire facias to revive a judgment be sued out, in order to preserve its lien, are those who have seisin of the land, those who are owners, or claim to be owners by title derived from the defendant in the judgment. There can be no terre-tenant, such as is intended by the Act of 1798 (3 Sm. Laws 331), who is not a purchaser, mediately or immediately, from the debtor while the land was bound by the judgment: Dengler *v.* Kichner, 13 Penn. St. R. 41.; Chahoon *v.* Hollenback, 16 S. & R. 432; In re Doner's Assignees, 1 Penn. St. R. 104. Such has always been held to be the law in Pennsylvania, and such are terre-tenants in England : 2 Saund. 7, n. 9. A mortgagee has never been regarded as a terre-tenant entitled to notice of the revival of a judgment. There has therefore been no failure or neglect in this case to make the necessary parties to all the judicial proceedings commenced by the plaintiff or his testator. The law did not require notice of the scire facias sued out to revive the judgment of 1860, to be given to the trustees of the mortgage, and if the lien of that judgment had expired, the revived judgment fastened a new lien upon the property. That lien was a security for the debt which, by the resolution of 1843, was made paramount to the mortgage, and against which, while it remains unpaid, the mortgage cannot be set up.

This, however, relates to the ordinary judgment lien, but it is not essential to the plaintiff's case, as exhibited by the evidence he offered, that the judgment which he now seeks to enforce is a lien upon the property claimed and held by the trustees of the mortgage and by the Wheeling, Pittsburg and Baltimore Railroad Company. It would be were it not for the legislative resolution of 1843 and for the enactment of April 4th 1862. But the first of these, as we have seen, made the debt due to the contractor, itself a lien

[Tyrone & Clearfield Railroad Co. v. Jones.]

without a judgment, and prescribed no limits to its duration. The second (the Act of April 4th 1862, sect. 1), manifestly recognised the existence of such a lien, and pointed out a mode for making it available to the creditor. * * *

This act makes special provision for such cases as the present. Under it all that is necessary to enable a contractor, laborer or workman to proceed by scire facias against a person or company claiming to hold or own the real or personal estate of the debtor to such contractor, laborer or workman, by virtue of a mortgage made in contravention of a resolution of 1843, is that he has obtained a judgment against the indebted company which gave the mortgage. It is not required that his judgment shall be a lien on the property. And plainly it was not intended that such a lien must exist. The resolution of 1843 prohibited transfers, assignments and mortgages of personalty as well as of realty, and a judgment creates no lien upon personalty. But the resolution recognises the right of a contractor to follow both into the hands of a claimant or owner holding under such an assignment, transfer or mortgage, without regard to the question whether the property is real or personal. It, therefore, recognises the existence of a lien in favor of those protected by it, independent of the lien of any judgment they may recover. This must be so, for if it is essential to a right to proceed by scire facias against the property in the hands of a grantee of the indebted company that the judgment of the creditor shall be a lien upon that property, what is to be said of the case where the indebted company has conveyed before the recovery of any judgment? In such a case the judgment can be no lien. Yet it will not be claimed the property could not be followed by scire facias against the grantee. And if it could, it must be, not because of the lien of the judgment, but because of the lien of the debt, a lien which, as there is no statutory limitation to it, remains so long as the debt remains unsatisfied. Such being, in our opinion, the true meaning of the joint resolution of 1843, and of the Act of the Legislature of 1862, the evidence offered by the plaintiff and rejected by the court should have been received. It tended to prove, inter alia, that the plaintiff's claim was within the protection of the joint resolution; that the mortgage under which the defendants hold was invalid as against him; that his case was embraced in the remedial Act of 1862, and that the defendants had bought under a decree of foreclosure of the mortgage, which expressly directed that the property should, notwithstanding the sale, remain subject to the claim of the plaintiff.

It has been contended, however, in support of the ruling of the court below, that the sale which was made of the property in March 1871, under a decree of the Supreme Court of Pennsylvania in the suit to foreclose the mortgage, divested the plaintiff's lien, and that thereafter his only remedy was a resort to the proceeds of that sale. This might be so if the only lien he had was that of his judgment. But, as we have endeavored to show, he had a lien independent of his judgment and prior to the mortgage. The decree of the Supreme Court ordered the property to be sold subject to that. The plaintiff petitioned to be allowed to intervene " pro interesse suo" in the suit for foreclosure, or, if that was not allowed, that he might be paid out of the proceeds of the sale, but his petition was refused, and the court ordered that the purchaser at the sale should hold the whole of the estate property, real, personal and mixed, of the Hempfield Railroad Company, " subject to any lawful claims or rights which may exist prior or paramount to said mortgage." The plaintiff's lien, therefore, was undisturbed by the sale, and, hence, he had no right to look to the proceeds of the sale for payment.

This disposes of the case. It is hardly necessary to add that the Act of the Legislature of April 12th 1851, empowering the Hempfield Railroad Company to borrow money and pledge its property and income to secure the payment thereof, cannot be regarded as exempting that company from the operation of the resolution of 1843.