## APPEAL OF W. W. REED.

[FIDELITY INS., T. & S. D. Co. v. WEST. PENN. & S. C. R. Co.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF MERCER COUNTY, IN EQUITY.

122  565
138  504
122  565
189  268

122  565
212  423

122  565
f226  183

Argued October 9, 1888—Decided October 29, 1888.

1. The protection of the resolution of January 21, 1843, P. L. 367, extends only to debts or liabilities which were incurred and remain unpaid prior to the execution of " any such assignment, conveyance, mortgage or transfer " in question: McBroom's App., 44 Pa. 92 ; Tyrone etc. Ry. Co. v. Jones, 79 Pa. 60.
2. Hence a contractor, all of whose work was done after the recording of a trust deed executed by a railroad company, may have no advantage of said resolution, even though his work and materials made the corporate property and franchises available as a security.
3. Such contractor, who had knowledge that under a trust mortgage the company issued bonds in excess of the capital stock paid in, and who was a participant in the fraud of such issue, may not attack the validity of the mortgage as in violation of the act of March 13, 1873, P. L. 45.
4. Videtur: When bonds, secured by a corporation deed of trust, are issued and sold at different dates thereafter, the whole issue must be treated as made of the date of the trust deed, regardless of the time when actually issued, unless the contrary is clearly expressed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS, and HAND, JJ.

No. 167 October Term 1888, Sup. Ct.; court below, No. 3 January Term 1887, C. P. in Equity.

On November 6, 1886, The Fidelity Insurance, Trust and Safe Deposit Company, trustee, filed a bill in equity against The West. Penn. & Shenango Connecting Railroad Company and W. W. Reed. The bill averred that the W. P. & S. C. R. Co. was in the hands of a receiver, under a decree of the Circuit Court of the United States for the Northern District of Pennsylvania, and that leave of said court had been obtained to institute the suit; that said railroad company had duly executed and delivered to the plaintiff a certain mortgage of its property and franchises, in trust to secure its bonds issued and in the hands of purchasers, which said mortgage was the first lien upon all the property therein described, and that the mortgagor had made default in the payment of interest upon its bonds; that W. W. Reed claimed a large balance to be due him for work and labor done and materials furnished for said railroad under a contract with the company, for which balance he claimed a lien upon the property and franchises of the company prior to the lien of the mortgage to the plaintiff, but without lawful right so to claim. For these and other grounds averred in the bill, the plaintiff prayed that its said mortgage should be declared the first lien upon the property and franchises therein described, for the benefit of the bondholders, and that the amount due thereon should be ascertained, and that in default of payment of the amount due, the mortgaged property and franchises should be sold free and clear of all liens, etc.

Separate answers on the part of the defendant company and W. W. Reed, being filed and issue joined, on March 7, 1887, Mr. Q. A. Gordon was appointed examiner and master.

One of the facts controverted before the master was as to the date when the construction contract of the defendant company with W. W. Reed was made. This contract was in writing and was dated August 15, 1882, though not executed that day but early in the following month. Negotiations were had between Mr. Reed and the president and certain directors

of the road, and on July 7th, 1882, Mr. Reed submitted a written proposition to construct the road upon terms which corresponded nearly with the written contract made when the president and two of the directors again met Mr. Reed on August 15th; but whether the contract was fully agreed upon verbally, on July 7th, when Mr. Reed's proposition was made, or not until August 15th, when the paper was signed, at all events Mr. Reed did no work under it until after the latter date. This question of fact, therefore, as well as the others in issue were found by the master in his report filed on June 26, 1888, to be as follows:

1. The railroad company, defendant in this case, was incorporated by virtue of the railroad laws of Pennsylvania, on or about April 28, 1881, under the name of the Connoquenessing Valley Railroad Company, which name was afterward, by a decree of the Court of Common Pleas of Butler county, dated July 11, 1882, changed to the West. Penn. and Shenango Connecting Railroad Company.

2. The railroad of said corporation extends, from the junction of the Western Pennsylvania Railroad, in the town of Butler, Pa., to Coalsville Junction on the line of the Shenango & Allegheny Railroad. The said railroad is all within the county of Butler, Pa., and the length of its main line is about twenty-one miles, and of its sidings about two miles.

3. The principal office of said railroad company is located in the town of Greenville, Mercer county, Pa.

4. The capital stock of said railroad company consists of ten thousand shares of the par value of fifty dollars each, making a total of $500,000. All of the capital stock was subscribed, but no part of it was paid up, except what the law required to be paid at the time of the incorporation of the company, viz.: about $12,000; the balance was held by the various subscribers in trust for the corporation.

5. At a meeting of the stockholders of the railroad company, held on February 28, 1882, a resolution was passed authorizing the board of directors to issue bonds of the corporation to the amount of $400,000, and to secure the same by a first mortgage on the railroad and other property, franchises and appurtenances, of the said railroad company, for the purpose of raising money to aid in the construction and equipment of its rail-

road.  In pursuance of this authority, the board of directors caused to be executed the mortgage involved in this suit, a copy of which is annexed to the bill.  The said mortgage covers the railroad and all other property of said railroad company, together with its revenues, rights, privileges and franchises, and is made to the Fidelity Insurance, Trust and Safe Deposit Company, trustee, in the sum of $400,000, to secure four hundred coupon bonds of said railroad company, of $1,000 each, bearing interest at the rate of six per cent. per annum, the interest payable semi-annually on the first of January and July of each year, and the principal in thirty years from the date of the mortgage.  The mortgage is dated July 1, 1882; it was, however, executed on July 12, 1882, and was recorded in the office of the recorder of deeds, of Butler county, on July 18, 1882.  The bonds bear the same date as the mortgage.

6. B. K. Jamieson & Co., bankers of Philadelphia, were employed by the railroad company as its agents or brokers, to negotiate the sale of the bonds, and the trustee with whom the bonds had been deposited was directed by the railroad company to deliver them to said brokers as they would make sale of them, and deposit with said trustee the proceeds of such sales.  Under this arrangement all of the said bonds were sold and delivered to the purchasers, on different dates between July 15, 1882, and July 19, 1883.

7. All of these bonds are still outstanding, and there is now due and unpaid on the same the principal sum, viz.: $400,000 and interest thereon from January 1, 1885.

8. At the time of the execution and recording of the mortgage, the railroad company had no railroad, and no contract for the construction of any had yet been entered into.

9. On August 15, 1882, W. W. Reed entered into a contract with the said railroad company for the construction of its railroad.  This contract is in writing, and a copy of the same is annexed to the bill.  By its terms the consideration to be paid to Reed for the construction of the railroad is made to consist partly in cash and partly in the capital stock of the railroad company.  J. T. Blair, A. H. Steele, and Thomas P. Fowler are parties to this contract, but only for the purpose of transferring to Reed the stock, which nearly all stood in their

names on the books of the corporation. Although this contract provides for the transfer to Reed of the entire capital stock of the railroad company, this was simply a device intended by the parties as a means of making said stock "paid-up stock." It was not meant that Reed should retain the stock as his own property. When it was subsequently transferred to him by the making out of certificates therefor in his name, he immediately indorsed the certificates in blank and returned them to Blair and Steele. The real consideration which Reed was to receive for constructing the railroad was the cash payments stated in the contract.

10. Reed commenced the work of constructing the railroad under his contract some time during the latter part of August, 1882, and pursued the same continuously until it was completed, which was about September 10, 1883.

11. The railroad company having failed to pay in full the cash payments due Reed for the construction of the railroad under the contract, he brought suit for the balance remaining unpaid thereon, in the Court of Common Pleas of Butler county, on April 5, 1884; and on April 22, 1883, recovered a judgment against said railroad company for $67,079.79. This judgment still remains due and unpaid. The record shows an assignment of the judgment by Reed, the plaintiff therein, to Charles Crocker, dated December 22, 1885.

Upon the foregoing facts, the master concluded as matter of law that the debt evidenced by the judgment of Mr. Reed was of the specific nature contemplated by the resolution of 1843, but it did not follow that the plaintiff's mortgage was subordinate to it. Only such mortgages are invalid as against a contractor's claim, as are subsequent thereto, in point of time : Fox v. Seal, 22 Wall. 424; Pittsb. etc. Ry. Co. v. Marshall, 85 Pa. 187; McBroom's App., 44 Pa. 92 ; and the proper date to which to refer the liability of the company for the balance due Reed was August 15, 1882, the date the obligation was assumed, although the work was not to be done until afterward.

The master further held that, as the bill was filed, not to determine by a decree made in advance of the sale, what claims would be liens upon the fund arising therefrom and the order of their priority, but to determine whether the proposed sale

would be utterly void as against Mr. Reed's judgment, and leave the mortgaged premises subject to its payment in the hands of the purchaser, it was unnecessary to decide upon the position taken on behalf of Mr. Reed that, as against his claim as contractor, the mortgage could date only from the sales of the bonds, ruling however that, in order to save his judgment from the effect of the proposed sale, it was incumbent upon Mr. Reed to show that the whole mortgage was subsequent to the date of his contract, and that if the mortgage, to the extent of the bonds sold after the date of that contract, was invalid as against the balance due him, the fund arising from the sale would be distributed at the proper time, when the question could be decided.

It was further contended on the part of Mr. Reed that the mortgage was void, because it was made up for more than double the amount actually paid in of the capital stock of the company, in violation of the act of March 13, 1873, P. L. 45, authorizing railroad corporations to mortgage their property, rights and franchises to secure their bonds issued; but the master ruled that this question was not raised by the pleadings, and that, moreover, if it were, such a defence could not be made by the defendant company: Wood's Railway Law, §§ 172, 191.

The master therefore recommended a decree, in substance: (1) That the plaintiff's mortgage was a first lien upon the defendant company's property and franchises to the extent of $25,000, the amount of the bonds secured thereby that had been sold on August 15, 1882, the date of the construction contract with Reed, with interest from January 1, 1885. (2) That the amount due and unpaid upon the bonds secured by the mortgage, was the entire sum thereof, to wit, $400,000, with interest from January 1, 1885. (3) That said last mentioned sum be paid by the defendant company to the plaintiff, with interest, within thirty days; or (4) in default thereof that an order of sale be issued.

To this report of the master exceptions were filed on behalf of Mr. Reed, raising the questions raised by the assignments of error shown hereafter. These exceptions being overruled were filed with the report, and, on the argument thereof, the

court, MEHARD. P. J., on July 14, 1888, filed the following opinion:

The questions raised by the exceptions filed to the report of the learned master, are chiefly, 1st, whether the mortgage of the defendant company to the plaintiff is fraudulent and void as against the claim of W. W. Reed; and, if not, 2d, whether plaintiff's mortgage secures priority of payment for all the bonds covered by it, over the claim of W. W. Reed. That the mortgage is void as against Mr. Reed's claim, is predicated on two grounds, 1st, Because of the resolution of January 21, 1843, P. L. 367, and 2d, because of § 7, Art. XVI., of the Constitution, and the act of March 13, 1873, P. L. 45.

It seemed to be assumed in the argument of this case by the learned counsel for Mr. Reed, and we think with entire correctness, that the validity of plaintiff's mortgage as affected by the resolution of 1843, depended upon whether the defendant company's liability to Reed arose before or after the execution of the mortgage. [A review of the evidence leads us to agree with the learned master, that the negotiations between the defendant company and W. W. Reed ended, and a definite contract was made between them on August 15, 1882, and not before that date. Inasmuch as the plaintiff's mortgage had been executed on July 12th, and recorded in the proper office on July 18th preceding, for the reasons given by the learned master, it does not fall under the ban of the resolution of 1843.] ²

[It is argued that this mortgage is void because it was made in violation of the act March 13, 1873, the last clause of the first section whereof is as follows, viz.: " Provided, that this act shall not be construed to empower any railroad company to issue bonds in excess of the capital stock actually paid in." The learned master has decided against this position for reasons which we think sound. Moreover, the master has found that "although this contract (between Reed and the defendant company) provides for the transfer to Reed of the entire capital of the railroad company, this was simply a device intended by the parties as a means of making said stock 'paid-up stock.'" If the stock was thereby made " paid-up stock " it belonged to Reed, and practically, he then became the " company " which was from time to time disposing of the bonds secured by

plaintiff's mortgage.]³ But the learned master further finds: " It was not meant that Reed should retain the stock as his own property. When it was subsequently transferred to him by making out the certificates therefor in his name, he immediately indorsed the certificates in blank and returned the same to Steele and Blair. The real consideration which Reed was to receive for constructing the railroad was the cash payments stated in the contract." This, of course, means that although the stock was not in fact paid up, Mr. Reed gave it the appearance and intended it to have the effect of "paid-up stock." Whether he did this for the benefit of himself or of others is immaterial.

It is evident from the manner in which the stock was issued and transferred that Mr. Reed must have known the company got no funds from that source. [He must likewise have known that the only other source from which the cash he was to receive could come, was the bonds secured by this mortgage, of the existence whereof he had not only constructive notice, but actual knowledge at the time he entered into the contract with defendant company.]⁴ From that source he did receive all the cash his contract called for, save the amount of his present claim. If, then, wrong were done under the act of assembly, Mr. Reed was a party to it and he received the benefit. Whether Mr. Reed were the owner of the stock of the company, or only participating in a scheme to give the stock a false appearance of being paid up, he cannot now complain of a violation of the law.

The learned master has confined his attention to the question whether the mortgaged land, if sold by the trustee under the mortgage, will remain subject to the claim of W. W. Reed in the hands of the purchaser, and omitted to consider whether all the outstanding bonds have an equal right to priority. The first question is perhaps the most important, but the latter is likewise of moment to the plaintiff and defendant, Reed, at this time. The future conduct of the claimants with respect to this property will doubtless be determined by the relative merits of their claims. The latter question is embraced in the issue made by the pleadings, and unless there be a substantial objection or a good reason for postponing its consideration, is properly before us and should now be determined. No such

objection has been made by either party, but on the contrary, both seem desirous to have it decided in this suit. As we perceive no good reason for delay it is embraced in this opinion.

If the facts and conclusions last set forth be correct, they are conclusive against the priority of Mr. Reed's claim over any of the bonds secured by plaintiff's mortgage. There are other reasons which lead to the same conclusion. A somewhat technical reason is to be found in the nature of the instrument by which the bonds are secured. It is a deed of trust in the nature of a mortgage. It like a mortgage rather than a mortgage in fact. The essential distinction seems to be that it conveys to the trustee an actual legal estate, and not a mere mortgagee's lien: 2 Washburn on Real Property, 78, § 11. The rights and duties of the trustee, the debtor and the cestuis que trust are to be found in the instrument itself: Ibid. 78–81; Bradley v. Chester Valley R. Co., 36 Pa. 141; Ashhurst v. The Montour Iron Co., 35 Pa. 30. It seems clear that the only decree a court of equity could make would be for the trustee to carry out his trust according to its terms, unless cause were shown, such as fraud, accident or mistake, to warrant a modification. No such ground has been shown. On the contrary, the facts this case presents are, a conveyance of the defendant company's property in trust, to be reconveyed on the fulfillment of certain conditions, or on the happening of certain events to be sold, and the proceeds applied to the payment of the bonds held by the cestuis que trust, all of whom are innocent purchasers for value; the contingency has arisen whereupon the bondholder could require a sale of the property in order to pay their bonds. In the absence of facts showing a superior equity, it must be held that they are entitled to the proceeds of such sale.

A reason of more substance is found in the nature of the bonds and their relation to the mortgage. Where a mortgage is given to cover future advances by one man to another, it is not a matter of much inconvenience for the mortgagee to ascertain, from time to time, as he is called on for advances, whether there be intervening liens. It is therefore reasonable and just that he should do so, and is in harmony with the purpose of the mortgage. But a different case is presented where a public improvement is undertaken, requiring the

expenditure of large sums of money, and the floating of a debt of great magnitude. The debt is necessarily divided into small parts and carried into different and distant markets. It would be out of the question to ascertain the state of the record or of the company's affairs each time a bond was about to be sold. If this were made the duty of purchasers, it would prevent the sale of such securities altogether, or at least confine their purchase to such large concerns as could buy in bulk after due and careful inquiry; even then the facts would be open to doubt at every subsequent sale. Thus their value would be entirely reduced. For these and similar reasons " the whole issue of such bonds must be treated as of the date of the mortgage, without regard to the time when they were actually put out, unless the contrary is clearly expressed:" Claflin v. Railroad Co., 4 Hughes, 12, 23; Nelson v. The Iowa Eastern R. R. Co., 8 Amer. Ry. Rep. (Shipman), 82, 88.

[The first paragraph of the decree recommended by the learned master, is therefore modified so as to read as follows, viz.: First, that the plaintiff's mortgage, a copy of which is annexed to the bill, bearing date July 1, 1882, executed by the West. Penn. & Shenango Connecting Railroad Company, is a first lien to the amount of $400,000, with interest thereon from January 1, 1885, upon the railroad and other property, tolls, franchises, incomes and effects therein mentioned, referred to or described, and is effectual, valid and binding thereon; and that the holders of the bonds secured by said mortgage are entitled to the benefit of all the rights and securities thereby conferred; and it is ordered, adjudged and decreed accordingly. It is further considered, adjudged and decreed: that the amount due and unpaid upon the bonds secured by said mortgage, is the entire principal unpaid upon the bonds secured by said mortgage, viz.: $400,000, and interest thereon from January 1, 1885; that the West. Penn. & Shenango Connecting Railroad Company shall pay to the Fidelity Insurance, Trust and Safe Deposit Company, trustee, named in the mortgage, within thirty days after the entry of this decree, the said sum of $400,000, with interest thereon from January 1, 1885, in discharge of said mortgage and the bonds thereby secured; and that in default of such payment within the period aforesaid, the said railroad and other property, tolls,

Arguments.

franchises, incomes and effects mentioned, referred to or described in said mortgage, with the appurtenances, be exposed to sale by public outcry, and sold clear and discharged from said mortgage and all other incumbrances and liens whatsoever and howsoever arising],[5] by such person or persons, and under such order as to terms and conditions of sale and distribution of the proceeds thereof, as shall, at the expiration of said period, be appointed and directed by the court, on the application of the plaintiff in this case.

Thereupon the defendant Reed took this appeal and assigned as error, inter alia:

1. The overruling of the exceptions to the master's report.

2–4. The portions of the opinion embraced in [ ] [2 to 4]

5. The portion of the decree embraced in [ ] [5]

*Mr. J. Ross Thompson* and *Mr. John P. Vincent* (with them *Mr. E. A. Walling*), for the appellant:

1. Mr. Reed's position as the contractor whose work and materials made the road at all an available security to the bondholders, gives him so strong an equity to have his claim paid out of the avails of a sale of the road as to require a court to find every fact in his favor of which there is any evidence; that all doubts should be thrown in his favor, even against mortgaged bondholders, and that the true date of the written contract may be shown by parol proof.

2. Assuming that the palpable violation of the act of 1873 by the railroad company, did not vitiate its mortgage, as between the bondholders and the company, yet when two equities clash, the inferior must give way to the superior, and Mr. Reed's equity is the superior beyond comparison. There is no clear proof that Mr. Reed had any knowledge of the mortgage prior to the beginning of the work, and there is not a particle of evidence that he knew of it either on July 7th or August 15, 1882.

*Mr. Johns McCleave* and *Mr. Geo. Shiras, Jr.* (with them *Mr. A. F. Henlein*), for the appellee:

1. So far from the appellant having any equity because his work and materials made the road available as a security to

the bondholders, it has been expressly decided that he could not have kept the materials he supplied out of the grasp of the mortgage, even if he had attempted it by a formal bargain with the railroad company: Poter v. Pittsburgh Bessemer Steel Co., 122 U. S. 267, 282, citing Dunham v. Railway Co., 1 Wall. 254; Galveston Railroad Co. v. Cowdrey, 11 Wall. 459, 480, 482; United States v. New Orleans R. Co., 12 Wall. 362, 365; Dillion v. Barnhard, 21 Wall. 430, 440; Fosick v. Schall, 99 U. S. 235, 251.

2. The appellant became a creditor after the contract under which the plaintiff claims, was executed and delivered, and the instrument itself spread upon the public records as the law requires, and, therefore, with full knowledge of it, and of the rights of all parties that might become interested under it. Moreover, he knew from the first paragraph of the mortgage that the company had expressly agreed " not to suffer any lien or attachment superior to the lien created by these presents to be enforced thereon." The resolution of 1843 never contemplated such protection as is here claimed.

3. The legality of the execution and delivery of the mortgage and of the issuance of the bonds is twice admitted in the pleadings; but even if it were not so, the appellant is in no position to assert their illegality. He knew of the mortgage and the issue of the bonds to be secured thereunder; that the capital stock was to be paid up by giving the entire amount to him as part compensation under his contract, and actually had the entire amount so issued to him. He then made himself the instrument and means by which the declaration went forth that the conditions existed which authorized the issue of bonds to the amount named. He is now estopped from asserting the contrary: Gelpcke v. Dubuque, 1 Wall. 175, 203; Cromwell v. Sac County, 96 U. S. 51; Aurora City v. West, 7 Wall. 82; Wilson v. Salamanca, 99 U. S. 499; Woods v. Allegheny County, 3 Wall. Jr., 267.

4. Purchasers of bonds secured by a corporation mortgage are not put to inquiry whether the bonds were issued simultaneously with the mortgage by which they are secured. The mortgage when recorded is notice to all who afterwards may acquire liens upon the property and franchises mortgaged. The bonds are payable to bearer, and are intended to be nego-

tiated for means to construct the road. To hold that the purchaser is to inquire as to the exact date when the bond he proposes to purchase was issued, would much depreciate the value of all such securities: Jones on Railroad Securities, § 210; Nelson v. Railway Co., 8 Am. Ry. R. 82, 88. The whole issue of bonds must be treated as of the date of the mortgage, without regard to the time they were actually put out, unless the contrary is clearly expressed: Claflin v. S. Car. R. Co., 4 Hughes, 12.

OPINION, MR. JUSTICE GREEN:

It is scarcely necessary to add anything to the clear and satisfactory opinion of the learned court below. We agree entirely with the conclusions reached and affirm the decree without hesitation.

In no point of view can the appellant claim the benefit of the resolution of January 21, 1843, P. L. 367. The deed of trust given by the corporation for $400,000, was executed on July 12, 1882 and recorded on July 18th of the same year. The construction contract with the appellant was not executed until August 15, 1882. Of course it had no legal efficacy until it was executed. The proposition of July 7th was only a proposition. It was not acted upon until after that time and never became a contract until August 15th. But, independently of this, the appellant has not brought himself within either the words or the meaning of the resolution of 1843. He did no work until after the date of the contract, and of course not until after the mortgage or deed of trust was recorded. Now the resolution by its very terms only protects debts or liabilities which have been incurred and remain unpaid prior to the execution of the "assignment, conveyance, mortgage or other transfer" in question. That this is the true meaning of the resolution has been repeatedly decided: M'Broom's App., 44 Pa. 92; Fox v. Seal, 22 Wall. 424, adopted by this court in Tyrone and Clearfield Railway Company v. Jones, 79 Pa. 60. Hence it follows that the appellant, all of whose work was done after the execution and recording of the deed of trust, and to whom no debt or liability of the company was due or remained unpaid prior to that time, can take no advantage of the resolution. His claim that he has an equitable lien which

gives him priority to the bondholders is altogether untenable. It is founded upon the allegation that as he did the work of construction, which gave value to the property of the company and tended to secure the bondholders, he has an equity in the nature of a lien sufficient to give him priority in the distribution. It is enough to say there is no such lien recognized at law or in equity. No authority is shown for the proposition, and we apprehend there is none.

It is suggested in one of the assignments of error that the mortgage or deed of trust is void under the act of March 13, 1873, which prohibits the issuing of bonds in excess of the capital stock actually paid in. It is only necessary to say that no such question is raised by the pleadings in this case, and hence it is not before us. Moreover it would not be practicable for the appellant to raise this question, because if any fraud or violation of the law was practiced in this respect he was himself a party to it. He received the whole capital stock ostensibly as part payment of the contract price of construction, but presumably for another purpose, because he immediately transferred it to others, and he therefore knew that the capital stock had not been paid in money. As a participant in the fraud he could not now be permitted to avail himself of his own wrong for his own benefit. The master has found that only twelve thousand dollars had been paid on the capital stock when the deed of trust was made. It was a clear and highly reprehensible violation of the law to execute a mortgage or deed of trust in such circumstances, and to put upon an innocent public a large amount of bonds whose validity might be very questionable, to say the least; but, as no question arising out of that consideration is raised upon this record, its discussion and decision are immaterial.

> Decree affirmed, and appeal dismissed at the costs of the appellant.