## Rauch v. Island Park Association.

*Mortgage—Corporation mortgage—Mechanic's lien—Priority Act of June 4, 1901, P. L. 431.*

Where a corporation mortgage is made for the security of all the bonds issued under it, and the bonds are issued, as far as anything appears to the contrary, to raise money for the general purposes of the association, and are sold in the ordinary course of business without knowledge by or notice to the purchasers of any particular use to which the money is to be applied, the bondholders are entitled to priority, in the distribution of the proceeds of the sale of the property of the company, over mechanics' liens filed for work begun after the mortgage was recorded; and all of the bonds are entitled to such priority although some of them were sold after the improvements, for which the liens were filed, were begun.

Argued Oct. 7, 1909.  Appeal, No. 182, Oct. T., 1909, by Ella R. Owens, from decree of C. P. Somerset Co., Equity Docket, 1906, No. 12, overruling report of auditor in case of John O. Rauch et al. v. Island Park Association.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Bill in equity for the appointment of a receiver.

Exceptions to report of J. G. Ogle, Esq., auditor.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* amongst others was in overruling the auditor's report.

*Wm. L. Pasco,* with him *A. A. Stevens, W. H. Ruppel, C. W. Walker, A. C. Holbert* and *W. L. Hicks,* for appellant.—The holders of negotiable bonds, secured by a corporation deed of trust, are protected from mechanics' liens, by the exception in the second section of the act of assembly, approved June 4, 1901, P. L. 431: Fenner v. Real Est. Trust Co. of Phila., 29 Pa. C. C. Rep. 329.

There was nothing on the face of the mortgage to indicate that it was given as an advance money mortgage: Eckels v. Stuart, 212 Pa. 161.

The whole issue of such bonds must be treated as of the date of the mortgage, without regard to the time when they were actually put out, unless the contrary is clearly expressed: Claflin v. R. R. Co., 4 Hughes, 12; Nelson v. R. R. Co., 8 Amer. Ry. Rep. 82; Reed's App., 122 Pa. 565; Fidelity Ins., etc., Co. v. R. R. Co., 138 Pa. 494; Com. v. R. R. Co., 122 Pa. 306.

*Charles C. Greer* and *Valentine Hay,* with them *A. L. G. Hay, Ernest O. Kooser, Edmund E. Kiernan, J. A. Berkey, C. L. Shaver, William Williams* and *H. S. Endsley,* for appellees.— The record of the mortgage itself, containing as it did so clearly the purposes of the proposed indebtedness, put each searcher on inquiry as to an explanation of why it had been given and was notice of everything which inquiry would have shown him: Coleman v. Reynolds, 181 Pa. 317; Kreusler v. Glukoff Co., 223 Pa. 174; Mullison's Est., 68 Pa. 212.

When bonds are issued as were these the presumption is that they are issued to raise money for contemplated improvements: Mason v. Frick, 105 Pa. 162; Eichelberger v. Gitt, 104 Pa. 64; Becker v. Kehr, 49 Pa. 223.

Priority is now given over all liens, charges and incumbrances, even though the mortgages are executed and recorded before the building itself is commenced and the liens are paid

out of the proceeds of any sale of the property, except as to the value of the lot itself: Fallon on Conveyancing, sec. 313; Rice v. Southern Penna. Iron R. R. Co., 32 Legal Int. 431; Roy's App., 169 Pa. 626; Reynolds v. Reynolds Lumber Co., 175 Pa. 437; Ashhurst v. Montour Iron Co., 35 Pa. 30; TerHoven v. Kerns, 2 Pa. 96.

OPINION BY MR. JUSTICE FELL, January 3, 1910:

The fund for distribution by the auditor arose from a receiver's sale of the real estate of an insolvent corporation, and the contest was between bondholders and mechanics' lien claimants for priority. The Island Park Association was incorporated under the Act of April 29, 1874, P. L. 73, for the purpose of "conducting mechanical, musical and theatrical performances and exhibitions of art and other lawful amusements." It became the owner by purchase of two pieces of land, one of which was described in the deed of conveyance as "known as the Valley Park Hotel, having thereon erected a two-story frame hotel building, stable, dancing pavillion, electric light plant and outbuildings" for a consideration of $21,400, about $20,000 of which was made up by the assumption of the payment of liens against one of the pieces of land.

On February 1, 1906, the association executed a mortgage of all its property, rights, privileges and franchises to the Johnstown Trust Company, as trustee to secure the payment of an issue of $100,000 of negotiable bonds of like date and tenor, all being equally secured by the mortgage, "without preference or priority as to any of said bonds by reason of priority in the time of the issue thereof, or negotiations or otherwise." The mortgage was recorded February 10; and the entire issue of bonds was certified by the trust company and delivered by it to the association on February 16, on which day bonds to the amount of $6,000 were sold. Other bonds to the amount of $49,500 were sold after that date and before any mechanics' liens were filed. On February 19, 1906, the association entered into an agreement for the building of walls and piers for a hotel, and on the same day the first work on the ground was begun.

The mortgage contained a recital of the authority given at a stockholders' meeting to issue bonds to the amount of $100,000 "to be sold and disposed of from time to time as the necessities of the company demand, and at a price to be determined by the board of directors," and a provision that the Park Association should from time to time pay all taxes, charges, etc., the lien whereof might or could be held to be prior to the lien of the mortgage, and that it should not "create or suffer any mechanics or laborers' or other lien or liens whatsoever to be created upon any part of the mortgaged property whereby the lien of the mortgage might or could be impaired in whole or in part," etc.

The contention on behalf of the mechanics' lien claimants was that the mortgage was given to secure advances of money knowingly furnished for the purpose of making improvements, and that they were entitled to the priority in distribution provided for by sec. 13 of the Act of June 4, 1901, P. L. 431. This contention was not sustained by the auditor, who reported that there was no evidence that the money was knowingly furnished for the purpose of making improvements, and that he could not assume that it was from anything that appeared in the testimony. He found that the mortgage was a corporation mortgage, duly authorized and given to secure a unit of indebtedness, recorded prior to the beginning of the work, and that the bonds secured by it were entitled to preference in distribution over the mechanics' liens.

Exceptions to this findings by the auditor were sustained by the learned judge of the common pleas for the reasons, as stated by him, that the purchasers of bonds knew that they were issued to provide money for improvements, "and that besides having actual knowledge and constructive notice, the circumstances made inquiry obligatory upon them." Of actual knowledge there was no evidence whatever. The treasurer of the association testified that the purpose of the bond issue was to raise money to improve the property by building a hotel and dance hall, and that he had stated this purpose to some persons to whom he had offered bonds, but there was no proof that he had sold any bonds or had made this statement

to anyone who became a purchaser of bonds. The matters relied upon to show constructive notice were the description of the property in the deed as "the Valley Park Hotel," etc., the recital in the mortgage that the bonds were "to be sold from time to time as the necessities of the company demanded," and the agreement not to allow the lien of the mortgage to be impaired by the filing of mechanics' or other liens; the fact that improvements were necessary to fit the property for the use intended and that the bond issue was larger than was necessary to provide for the operating expenses.

We do not see that any or all of these things warrant the conclusion reached. The description in the deed of the buildings already on the ground would indicate that the property was fitted for its intended use, rather than that new buildings were required; the sale of bonds as the necessities of the company demanded was not notice of an intention to erect new buildings, as the money might as well be required to purchase more land or to repair and improve existing buildings; no significance amounting to notice can be given to the agreement not to permit the filing of mechanics' lien or liens of any kind that might impair the security of the mortgage; the necessity for improvements and the character and cost thereof were matters wholly within the discretion of the directors of the association, and a purchaser of bonds could not be charged with knowledge of their undisclosed intentions.

Section 13 of the act of 1901 gives effect to mechanics' liens for alterations and repairs as of the date of filing; in all other cases as of the date of the visible commencement of the work on the ground; and it provides that "An estate, charge or lien of which the claimant had actual or constructive notice before the date of such visible commencement on the ground, if given to secure advances of money, knowingly to be furnished for the purpose of making the improvement in whole or in part, shall have with prior liens and incumbrances, a preferential claim upon the funds raised by a judicial sale of said property, to the extent only of the actual value of the property immediately prior to such visible commencement of the work; but the proceeds of such sale above such value shall be applied to the

payment of the mechanics' claims in preference to such estate, charge or lien." The prior Act of June 8, 1881, P. L. 56, limited to the value of the ground before buildings were erected the liens of mortgages that were intended to secure advances of money to be made for building. The later act includes not mortgages only but "An estate, charge or lien," given to secure advances of money made for the purpose of making improvements generally. The provision that the money shall be furnished knowingly for the specific purpose is the same.

Outside of the act of 1901 the mechanics' lien claimants had no standing whatever to claim priority, and under it they have none. The mortgage was of record, and the bonds had been issued and were in the course of negotiation when they made their contracts. The mortgage was the security for all the bonds, and the whole issue must be treated as of its date: Reed's App., 122 Pa. 565. It is the knowledge of the lender, not the unexpressed intention of the borrower, that must govern. The bonds were issued, as far as anything appears in the record, to raise money for the general purposes of the association, and were sold in the ordinary course of business without knowledge by or notice to the purchasers of any particular use to which the money was to be applied. A purchaser was under no duty to inquire what use was to be made of the money. The record was his guide, and beyond that he was not bound to look.

The decree is reversed at the cost of the appellee, and it is directed that distribution be made in accordance with the report of the auditor.