Judgment reversed.

## Gibson *versus* Lenhart, Receiver, &c.

1. Every transfer of railroad coupon bonds for value and without notice gives the transferee a good title to them as against the former holder.

2. The transferee of a coupon bond is presumed to be a bona fide holder for value.

3. A. borrowed money of B. and agreed to deposit certain railroad coupon bonds with the C. bank as collateral for its repayment. Shortly afterwards B. received from the C. bank a certificate that A. had deposited the bonds with it according to agreement. A. and the C. bank both failed and the bonds were found in the bank enclosed in an envelope with B.'s name indorsed thereon. The receiver of the bank promised to give them to B. when the certificate of deposit should be presented. It was then discovered that B. had made a prior pledge of the same bonds to D. who also held the bank's certificate of deposit for them. In an action of replevin by B. against the receiver of C. to recover the collaterals covered by his certificate of deposit, these facts were shown and the court directed the jury to find for the defendant.

*Held,* that this instruction was erroneous and that it was for the jury to determine from the testimony whether B. was a bona fide transferee for value of the bonds replevied and therefore entitled to them as against the bank.

November 27th 1882.    Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

[Gibson v. Lenhart.]

ERROR to the Court of Common Pleas of *Crawford county :* Of July Term 1882, No. 66.

This was an action of replevin by Wm. Gibson against J. H. Lenhart, receiver of the First National Bank of Meadville, for $9,000 coupon bonds of the Shenango and Allegheny Railroad Company dated April 1st 1869 and numbered as follows: Nos. 121, 504, 698 and 991 for $1,000 each and Nos. 925, 931, 987, 988, 989, 1081, 1082, 1083, 1084, 1086, 1087. Pleas non cepit in modo et forma, property, and a special plea setting up property in one George Beringer.

Upon the trial, before CHURCH, P. J., Gibson, the plaintiff, proved that on April 20th 1878, he loaned to one Wm. Thorp $6,674.40, taking therefor his promissory note payable one year after date. At the time of making this loan and as the condition on which it was made, Thorp gave Gibson the following agreement in writing.

JAMESTOWN, PA., April 20th 1878.

I have this day borrowed from Dr. William Gibson, and given him my note, payable one year from date, the sum of six thousand six hundred and seventy-four dollars and forty cents, due in one year, for which I am to deposit in the First National Bank of Meadville, nine thousand dollars, Shenango and Allegheny Railroad bonds, as collateral security for the payment of said note, and to send him a certificate of said deposit within ten days from this date.　　　　　WM. THORP.

Upon May 3rd 1878 Gibson received the following notice from the bank.

C. A. DERICKSON, President.　WM. THORP, Vice President.
R. W. DERICKSON, Cashier.

FIRST NATIONAL BANK OF MEADVILLE. }
MEADVILLE, PA., May 3d 1878. }

Dr. Wm. Gibson, Jamestown, Pa :

DEAR SIR :—Wm. Thorp has this day deposited in this Bank nine thousand dollars in bonds of the Shenango and Allegheny Railroad Company, to be held as security for the payment to you of his note for six thousand six hundred and seventy-four dollars and forty cents, dated April 20th 1878, due in one year from that date. Wm. Thorp has reserved the right of taking the coupons from the above mentioned bonds, as they become due.　　　　Yours truly,　　　R. W. DERICKSON.

The bonds were all in the same form, and of the character known as railroad coupon bonds ; one bond was put in evidence as a sample of the rest, but it was not printed with the record.

Gibson did not call at the bank or demand the bonds until November 13th 1879—Thorp having failed and made an assign-

ment for the benefit of his creditors onNovember 12th 1879. The
plaintiff was then informed by the President that the bonds
were in the vault, and would be delivered to him upon the sur-
render of the certificate of deposit. The plaintiff called at the
bank several times afterwards, but as he had mislaid the re-
quired certificate the bonds were not given up. At one of these
visits an envelope was shown him endorsed " Dr William Gib-
son $9,000 bonds Shenango and Allegheny Railroad Co." and
he was informed that his bonds were there. Coupons as they
became due were cashed to the amount of $315 and this sum
marked " the property of Dr. William Gibson " was placed in
the envelope with the bonds.

On June 3d 1880 the bank failed and an agent of the gov-
ernment named Young took possession as temporary receiver,
until J. H. Lenhart, the defendant, was duly appointed as such
and took possession on June 30th 1880. Gibson called on
Young at the bank who took out the bonds and the $315 in
money which last he paid, and offered Gibson the bonds if he
would show the certificate of deposit. Gibson did not find the
certificate until after this suit was brought.

The defendant showed that on September 20th 1877, one
Wm. Reynolds together with Thorp executed to George Ber-
inger their promissory note for $15,000 payable two years after
date for which they deposited as collateral with the First Nat-
ional Bank $20,000 of Shenango and Allegheny coupon bonds.
The bank issued the following certificate of deposit therefor:

Received, September 21st 1877, of Wm. Thorp the follow-
ing bonds: Nos. **121** and **504**, of one thousand dollars each ; also
Nos. **987, 989,** 994, **988, 1031, 1087, 1084, 1082,** 1088, **1086,**
1085, and **1083,** of five hundred dollars each of the Shenango
and Allegheny Railroad bonds; also received of William Rey-
nolds twelve bonds of one thousand dollars each of Shenango
and Allegheny Railroad bonds, to be held by us in accordance
with the terms of the deposit and trust hereto annexed—said
bonds of Mr. Reynolds are Nos. 420, 701, 702, 125, 127, 126,
135, 703, 144, 362, 418, 419.

R. W. DERICKSON,
Cashier First Nat. Bank, Meadville.

[The bonds corresponding to the numbers in heavy-faced
figures being included among those pledged to the plaintiff.]

The papers relating to this transaction were not discovered
by the receiver until after the demand had been made by Gib-
son. He then on examination found that $6,500 of the bonds
were also included in those pledged to Beringer.

The defendant then offered to prove by Reynolds "that he
went into the First National Bank of Meadville, and had a con-
versation with the president of the bank since deceased, that he

[Gibson *v.* Lenhart.]

inquired about the collaterals on the Beringer note, after the failure of William Thorp; that the package of bonds, or the envelope containing the bonds, was produced; that the president of the bank then stated to witness that he had put the bonds in this envelope without knowledge of the contract of hypothecation to Beringer, but on the representation of Dr. Gibson that the bonds belonged to him as collateral security. That the president put the bonds in the envelope long after the alleged hypothecation to Beringer, on the strength of the statement of Dr. Gibson; that the bonds were hypothecated to him as collateral security for his debt."

The plaintiff having objected to this offer:—

BY THE COURT. "We sustain the objection in part. We will allow the witness to state the fact (if it exist) if he received information, what the information was from the president of the bank, in which the custody of the bonds in controversy was placed, which information is alleged to have been given at the time the bonds were in the custody of the president of the bank, as to the time and manner in which they came into the custody of the envelope endorsed with this plaintiff's name, and under which the plaintiff claims." Exception. (1st assignment of error.)

The plaintiff requested the court to charge as follows:

1. The bonds involved in this controversy are railroad bonds, payable to bearer; and if they were negotiated to plaintiff as collateral security for a loan of money made by him to Thorp, at the time, and that he had no knowledge that another than Thorp claimed property in them, then he is a bona fide holder for value in the usual course of business, and the verdict should be in his favor.

Answer. "Refused under the circumstances of the case." (2d assignment of error.)

2. If the jury find that Mr. Thorp, at the time he contracted for the loan with Dr. Gibson, agreed to deposit in the First National Bank of Meadville, $9,000 of the Shenango and Allegheny Railroad bonds, as collateral security for the payment of said loan, and that within a reasonable time thereafter Gibson received from the cashier of said bank a certificate that Mr. Thorp had deposited the bonds in the bank, as per agreement, and that the bonds in controversy $9,000 in amount, were subsequently found in the bank, enclosed in an envelope, with the name of Dr. Gibson endorsed thereon, and their being no evidence of anything wrong or mala fides on his part, the verdict should be for plaintiff.

Answer. "Refused under the circumstances and evidence in the case, and in the view the court takes of the same." (3d assignment of error.)

[Gibson *v.* Lenhart.]

The court charged, inter alia, as follows:

" We say to you that the First National Bank of Meadville was the custodian of the pledgee, and pledgor of the original package of bonds in 1877, and they had no right (and the presumption, so far as the evidence in this case is concerned, they did not exercise the right) to take the bonds pledged to George Beringer and pledge them to Dr. Gibson; and so far as the latter sets up the title as being a bona fide purchaser for value, we say to you he is not such a bona fide purchaser for value as to entitle him to recover these bonds. He never had actual possession of them. The First National Bank was a mere bailee for him as a pledgee, and the bailee for Beringer, the former pledgee. Hence . . . . his pledge being prior in point of time, he is entitled to hold $6,500 of those bonds, that amount being identified by their witnesses, as against the subsequent bailment, or, rather, as against the bailment or pledge, such as this plaintiff claims in this case, hence there is nothing to leave to you as a fact to be found." (5th assignment of error.)

The jury under the binding instructions of the court found a verdict for the defendant for Shenango and Allegheny Railroad bonds No. 504, of one thousand dollars; No. 121, of one thousand dollars; No. 1083, of five hundred dollars; No. 1087 of five hundred dollars; No. 1086, of five hundred dollars; No. 1084, of five hundred dollars; No. 1082, of five hundred dollars; No. 1081, of five hundred dollars; No. 989, of five hundred dollars; No. 987, of five hundred dollars; No. 988, of five hundred dollars. And for the plaintiff for Shenango and Allegheny Railroad bonds as follows: No. 791, of five hundred dollars; No. 931, of five hundred dollars; No. 925, of five hundred dollars; and No. 968, of one thousand dollars.

On which verdict judgment was duly entered.

Whereupon plaintiff took this writ assigning for error, inter alia, the admission of Reynolds's testimony, the answers of the court to plaintiff's points and the charge of the court to the jury as above noted.

*H. L. Richmond* and *John G. Johnson*, for plaintiff in error. —Coupon bonds payable to bearer pass by delivery and the bona fide purchaser is unaffected by want of title in the vendor. The burden of proof lies on the party who assails the possession: Carpenter *v.* Rommel, 5 Phila. 34; Carr *v.* La Fevre, 3 Casey 413; Com'th *v.* Pittsburgh, 10 Casey 519; Murray *v.* Lardner, 2 Wal. 110; Commissioners *v.* Bolles, 4 Otto 109; Commissioners *v.* The Railroad, 4 Otto 278; Munn *v.* McDonald, 10 Watts 273; 1 Daniel on Negotiable Inst. § 824. The declarations of the president of the bank in the course of his duty

were evidence against the defendant but inadmissible in its favor nor were they part of the res gestæ. The bank in the present suit is estopped by its certificate of deposit from denying the plaintiff's title. Beringer is not. He may maintain his own title in another suit but the bank cannot shelter itself under his title: Wells on Replevin §§ 693, 696; King v. Richards, 6 Wharton 427.

*John J. Henderson*, for the defendant in error.—In an action of replevin the plaintiff must show property either absolute or special in himself. Evidence that another owns the property or has a right superior to the plaintiff will defeat his action: Seibert v. McHenry, 6 W. 303; Quincy v. Hall, 1 Pick. 360. The plaintiff parted with his money before any deposit was made, upon the simple promise of Thorp that he would deposit collateral security. A pledgee of negotiable instruments as collateral security for a pre-existing debt is not a bona fide holder for value: Depeau v. Waddington, 6 Wh. 232; Kirkpatrick v. Muirhead, 16 Pa. St. 123. The delivery to him of the identical bonds in controversy was in no way the inducement to him to make the loan. The most that plaintiff can claim is that he expected some bonds to be deposited. Neither did Thorp intend to deposit these bonds, for they were at that time out of his possession and control.

The evidence of the declarations of the president of the bank were not considered by the court. Whether it was competent or not it did the plaintiff no harm.

Mr. Justice STERRETT delivered the opinion of the court, December 30th 1882.

It may be conceded that in 1877 the bonds in controversy were deposited in the First National Bank of Meadville, to secure the note of Thorp and Reynolds in favor of Beringer, and that the note was not fully paid nor the collaterals voluntarily surrendered to the pledgor; but, it by no means follows that the same bonds may not have been subsequently pledged to the plaintiff as collateral security for the money loaned by him to Thorp in April 1878. Being negotiable securities, every transfer of the bonds to a new holder, for value and without notice, would give the latter a good title to them as against the former holder. That such is the status of coupon bonds, similar to those in question, is too well settled by recent decisions to admit of any doubt: County of Beaver v. Armstrong, 8 Wright 63, 69; Murray v. Lardner, 2 Wal. 110, and Commissioners v. Bolles, 4 Otto 109. Like a bank note, or promissory note indorsed in blank, they pass by delivery, and a good faith purchaser is unaffected by want of title in his vendor. The last

[Gibson *v.* Lenhart.]

taker is presumed to be a bona fide holder for value and may maintain his possession against everybody until the contrary is successfully established by those who undertake to assail his possession.

It is claimed by plaintiff that in making the loan to Thorp in April 1878, an essential provision of their agreement was that the latter should deposit in the First National Bank of Meadville $9,000, Shenango and Allegheny Railroad bonds, as collateral security for the loan, and furnish him with the bank's certificate of such deposit; that a few days thereafter he received from the cashier a certificate setting forth, in substance, that Thorp had deposited in the bank bonds corresponding in kind and amount with their agreement, "to be held as security for the payment of his note for $6,674.40, dated April 25th 1878, due in one year from that date;" that, resting in the belief that Thorp had fully complied with the condition on which he obtained the loan, he awaited the maturity of the note; and, immediately after the failure of Thorp he called at the bank and was informed by its president that his bonds were there, and his claim was secure; that, afterwards, upon inquiring for the bonds, an envelope, indorsed, "Dr. Gibson $9,000 bonds, Shenango and Allegheny Railroad Co." was handed him by an officer of the bank who informed him that on surrendering the certificate of deposit he could lift the bonds; but, having mislaid the certificate, the bonds were not taken out of bank. By an arrangement with its president, however, the past due coupons were collected by the bank and the proceeds $315, marked "The property of Dr. William Gibson," placed in the envelope with the bonds. After the failure of the bank, the money thus identified as his, was handed to plaintiff by the temporary receiver; but, in the absence of the still missing certificate, he declined to surrender the bonds, and they remained in the vaults of the bank until taken by the sheriff on the writ of replevin and delivered to plaintiff.

If the case had been submitted to the jury on the testimony before them, they would have been warranted in finding the facts substantially as claimed by plaintiff; and that the bonds in controversy are those referred to in the certificate of the cashier and afterwards exhibited to the plaintiff in the bank, where they had been deposited by Thorp in compliance with the condition on which he obtained the loan.

In view of the testimony and the conclusions which might have been fairly and legitimately drawn therefrom, the learned judge erred in refusing the plaintiff's points and in withdrawing from the consideration of the jury the several questions of facts therein presented; and also, in charging as complained of in the fourth to seventh specifications inclusive. As already suggested,

[Gibson v. Lenhart.]

the questions of fact referred to were fairly raised by the evidence, and if they had been found, as they might and probably would have been, in favor of the plaintiff, he would have been entitled to a general verdict establishing his right to all the bonds.

It cannot be pretended that the bonds were pledged to the plaintiff as security for an independent and antecedently contracted debt. The cotemporaneous agreement to deposit them as collateral security entered into and formed an essential feature or condition of the contract of lending. It was doubtless the leading consideration, so far at least as the plaintiff was concerned, without which the loan would not have been made. The contract was carried out in apparent good faith, and was so recognized by the bank, which now claims, in direct contradiction of its own certificate, to have been the custodian of the same bonds for a prior pledgee. If there was any bad faith in the transaction, it was not on the part of the plaintiff, nor is there a particle of testimony to show that he was aware of any, on the part of any one else. From the time the bank issued and delivered the certificate of deposit it became his agent for the custody and safe keeping of the bonds. Its possession was thenceforth his possession, as fully to all intents and purposes as if they had been actually delivered to him. While the pledge was not fully completed by actual delivery or deposit of the bonds on the day Thorp borrowed the money, the continuance of the loan depended on the full execution of the pledge; and, the subsequent forbearance, which doubtless resulted from receiving the certificate of deposit placed the plaintiff in no worse position than he would have occupied if the pledge and receipt of the money had been simultaneous. Upon the facts claimed by the plaintiff and suggested in the points submitted by him, all of which might have been found in his favor, he is entitled to the bonds, as against the bank, if not against Beringer, the former pledgee, also. But as to the latter we express no opinion, for the reason that he is not a party to this suit.

The testimony, complained of in the first assignment, should have been excluded on the ground of incompetency.

Judgment reversed and a venire facias de novo awarded.