FIDELITY ETC. CO. v. WEST. PENN. ETC. R. CO.
ET AL.

APPEAL BY FIRST N. BANK ET AL. FROM THE COURT OF COM-
MON PLEAS OF MERCER COUNTY.

Argued October 14, 1890—Decided January 5, 1891.
[To be reported.]

1. The power of a railroad company, incorporated under the act of April 4,
1868, P. L. 62, to borrow money upon a mortgage of its property and
franchises for the construction and equipment of its road, is limited in
the clearest manner to twice the amount paid up of its capital stock:
Section 8 of said act.

2. Such a mortgage, given for a greater amount than that specified, is
unauthorized, and might be held inoperative and void as to parties hav-
ing the right to complain; but, as between bona fide holders of the
mortgage bonds and the company, the mortgage is a lien upon the
mortgaged property: Reed's App., 122 Pa. 565.

3. Subsequent creditors of the company, who became such with notice of
the mortgage while the negotiation of the bonds was in progress, occupy
no better position than the company itself, and cannot set up its fraud
in exceeding the authority conferred, as a defence against the victims
of that fraud.

4. The provision of § 7, article XVI. of the constitution, prohibiting the
fictitious increase of corporate indebtedness, will not apply to the sale
of the mortgage bonds of a railroad company, for which it receives the
money from innocent purchasers at par, for construction and equip-
ment; the debt is not fictitious, though the securities may turn out to be
largely so.

5. When interest coupons of mortgage bonds have been presented and
paid at the place of payment with money furnished by a third party, a
private arrangement between such third party and the mortgagor, that
the transaction shall be treated as a purchase of the coupons by the for-
mer, is not enforceable against the bondholders.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 126 October Term 1890, Sup. Ct.; court below, No. 3
January Term 1887, C. P. in Equity.

On November 6, 1886, the Fidelity Insurance, Trust and
Safe-Deposit Company filed a bill in equity against the West.

Master's Report.

Penn. & Shenango Connecting Railroad Company and W. W. Reed, to enforce a mortgage upon the railroad, franchises, etc., of the defendant company, given to the plaintiff as trustee for the holders of certain bonds issued by said railroad company, to secure the payment of said bonds.

The cause was so proceeded in that on July 14, 1888, the court entered a decree adjudging the mortgage to be a first lien upon the property embraced therein, and directing that in default of the payment by the railroad company to said trustee, within thirty days from the date of the decree, of the amount of the mortgage debt, to wit $400,000, with interest from January 1, 1885, the said railroad, franchises, etc., be exposed to sale by public outcry and sold clear of encumbrances, and the proceeds of such sale distributed as should be afterwards directed by the court.   W. W. Reed, one of the defendants, who claimed to have a contractor's lien superior to said mortgage, under the resolution of January 21, 1843, P. L. 367, thereupon appealed from said decree to the Supreme Court.   On October 29, 1888, the decree was affirmed and the appeal dismissed: Reed's App., 122 Pa. 565.

On November 22, 1888, the defendant company having failed to make payment of any part of the sum mentioned in the decree of July 14, 1888, the court below made a supplemental decree directing the mortgaged property to be sold, prescribing the terms of sale, and appointing the plaintiff company commissioner to make such sale.   A sale of said property to Samuel B. Dick and others, a committee of the bondholders, for $125,000, having been made and confirmed, the court, on March 4, 1889, appointed *Mr. Q. A. Gordon* master, to settle and adjust the account of the Fidelity company, with respect to the sale so made by it and the proceeds thereof.

A number of claimants of the proceeds of the sale appeared before the master, who found the facts relating to the respective claims, so made, in substance as follows:

1. The holders of the bonds, to secure which the mortgage in suit was made, claimed priority of payment over all other claimants.   The mortgage was dated July 12, 1882, and recorded on July 18, 1882.   The bonds amounted, as found by the decree of sale, to $400,000, with interest from January 1,

1885. The capital stock of the railroad company was $500,000. This stock was all subscribed, but only $12,000 of it was paid up. The mortgage was made in the sum of $400,000 and bonds issued to that amount. These bonds were all sold in the market at Philadelphia to bona fide purchasers, at their par value, soon after they were issued.

2. The Pennsylvania Railroad Company, as the holder of certain interest coupons to the amount of $12,930, cut from said railroad bonds, claimed to participate in the distribution under the mortgage. On February 3, 1888, prior to the decree of sale, the court, by consent of all parties interested, made an order placing this claimant upon the record as a party defendant in the cause, but providing that the master before whom the case was then pending might report upon the testimony then before him, without prejudice to the right of the Pennsylvania company to come in and establish its claim upon distribution of the proceeds of sale.

Of the coupons held by said claimant, $12,000 were those which matured on January 1, 1884, and the remainder, $930, were a part of those which matured July 1, 1884. In form, these coupons were as follows:

"WARRANT FOR THIRTY DOLLARS.

" The West. Penn. & Shenango Connecting Railroad Company interest warrant on bond, for $30; payable at the office of the Fidelity Insurance, Trust and Safe-Deposit Company, Philadelphia, Pa., on the first day of January, 1884.

"I. D. STINSON,

" No.——$30.    Sec'y & Treas."

The coupons falling due January 1, 1884, amounting to $12,000, were presented at the office of the Fidelity company, at Philadelphia, by the holders of the bonds, and were duly paid in the regular course of business, by the said Fidelity company. The money with which said coupons were paid, was not the money of the West. Penn. & Shenango Connecting Railroad Co., but was furnished by the Pennsylvania Railroad company to the Fidelity company, at the request of the West. Penn. & Shenango Connecting Railroad Company, for the purpose of purchasing said coupons. When these coupons were paid by the Fidelity company, to the bondholders, the latter had no notice that said coupons were being purchased for the Pennsylvania

Master's Report.

Railroad Company. The coupons held by the Pennsylvania Railroad Company, which matured July 1, 1884, amounting to $930, were paid by the Fidelity company, between the dates of July 1, 1884, and July 21, 1884.

3. The holders of certain notes upon which the West. Penn. & Shenango Connecting Railroad Company was liable as maker or indorser, claimed payment thereof out of the fund, adversely to the mortgage, and attacked the validity of the latter, as made in violation of law. These claims were as follows: First N. Bank of Conneautville, $5,000, with interest from March 13, 1884; Second N. Bank of Erie, $11,073.17 with interest from September 11, 1886; Erie County Savings Bank, $5,000, with interest from March 17, 1884; First N. Bank of Greenville, $3,000, with interest from October 8, 1887; Merchants' N. Bank of Meadville, $5,000, with interest from March 30, 1884, and $3,000, with interest from April 30, 1884. Before the sale was made in this case, viz.: On December 12, 1888, the First N. Bank of Greenville, the Second N. Bank of Erie, the First N. Bank of Conneautville and the Erie County Savings Bank, filed bills in equity against the Fidelity company, trustee, asking for injunctions to restrain the sale and also for leave to intervene in this suit and defend against the mortgage. Upon these bills the court made an order refusing the injunctions, but without prejudice to the rights of said banks, on the distribution of the proceeds of the sale.

4. The estate of Charles Crocker, deceased, holder of a certain judgment in the Court of Common Pleas of Butler county, Pennsylvania, against the West. Penn. & Shenango Connecting Railroad Company, for $67,079.79, with interest from April 22, 1884, also attacked the validity of the mortgage. This judgment was obtained April 22, 1884, by W. W. Reed, against the said railroad company, on two certificates of indebtedness given by said railroad company to said Reed, one for $38,164.52 and the other for $28,000. It was stated in the latter certificate that the railroad company had given Reed notes to the amount of it, and that payment of the notes should be a payment of this certificate. These notes have not been paid. The notes presented for allowance in this distribution by the several banks hereinbefore named, were those same notes or renewals thereof. Reed was still liable on some of these notes, at least as indorser

Master's Report.

or otherwise.   Out of the proceeds of one of the original notes, when negotiated, the railroad company received $2,136.67. The judgment presented was assigned to Charles Crocker by Reed, on December 22, 1885.

The master upon the facts so found, reported his conclusions of law, in substance as follows:

1. The mortgage in question was made in violation of law, or, more properly speaking, without authority of law.   The provisions of § 7, art. XVI. of the constitution, prohibiting fictitious increase of corporate indebtedness, has no application, as the mortgage bonds were all sold at par for money received. Nor does the act of March 13, 1873, P. L. 45, apply, as the limita-. tions therein contained relate to such mortgages only as have no other authority for their creation than that act; and the mortgage in question, having been given, as appears upon its face, to raise money for the construction and equipment of the mortgagor's railroad, was authorized by § 8, act of April 4, 1868, P. L. 62, the authority of the company to mortgage being limited, however, to double the amount of capital actually paid in at the time of the mortgage; and this mortgage, being given for an amount in excess thereof, was unauthorized and void, though the bonds might be valid as unsecured claims; citing: Jones on Railroad Sec., §§ 1, 3, 312, 313, 641; Pittsb. etc. R. Co. v. Railroad Co., 81* Pa. 104; Phil. etc. R. Co. v. Stichter, 11 W. N. 325; Phila. etc. R. Co. v. Lewis, 33 Pa. 33; Louisiana v. Wood, 102 U. S. 294; Rainsburg Bor. v. Fyan, 127 Pa. 74; Railroad Co. v. Howard, 7 Wall. 392.

2. The railroad company itself cannot set up the defence of ultra vires against this mortgage: Wright v. Pipe Line Co., 101 Pa. 204; Oil Creek etc. R. Co. v. Transportation Co., 83 Pa. 160; Railway Co. v. McCarthy, 96 U. S. 258; Wood's Railway Law, § 172; Jones v. Guaranty Co., 101 U. S. 622; Morawetz on Priv. Corp., §§ 610–615, 689; Thomas v. Railroad Co., 101 U. S. 71; Jones on Railroad Sec., § 23; Bissell v. Railroad Co., 22 N. Y. 258; Monument N. Bank v. Globe Works, 101 Mass. 57; Ossipee Mfg. Co. v. Canney, 54 N. H. 295; Galveston R. Co. v. Cowdrey, 11 Wall. 459.   Millerstown Bor. v. Frederick, 114 Pa. 435, is easily distinguishable, as the municipal bonds involved in that case were issued in the attempt to exercise a power expressly prohibited by the constitution and by statute.

3. As the railroad company itself cannot question the validity of its mortgage, neither can its general creditors do so in this case, their credits having been given to the company with notice of the mortgage after it had attached to the property: Graham v. Railroad Co., 102 U. S. 148; and, further, those creditors are concluded by the decree, in this proceeding, establishing its validity as a lien upon the mortgaged premises: Stout v. Lye, 103 U. S. 66; Hartman v. Ogborn, 54 Pa. 120.

4. The interest coupons or warrants held by the Pennsylvania Railroad Company, are probably not negotiable instruments, separated from the bonds: Jones on Railroad Sec., § 323; Everston v. Bank, 66 N. Y. 14 (23 Am. Rep. 9); except that, being intended to pass by delivery, the holder may sue thereon in his own name: Phila. etc. R. Co. v. Smith, 105 Pa. 195. However, there is no question in the case respecting any equities of the maker. The transaction by which the Pennsylvania Railroad Company acquired the coupons, while a purchase of them, as between it and the mortgagor, was a payment as to the bondholders, who had no notice that a purchase instead of a payment was intended, and never assented to the arrangement between the two companies that it should be a purchase. Hence, as the fund is insufficient to pay the bonds in full, the claim of the Pennsylvania Railroad Company must be rejected: Jones on Railroad Sec., § 329; Union Trust Co. v. Railroad Co., 63 N. Y. 311 (20 Am. Rep. 541); Ketchum v. Duncan, 96 U. S. 659.

The master, therefore, after deducting the costs of the proceedings and $25,000 which the decree of sale directed to be paid to the clerk of the Circuit Court of the United States for the Western District of Pennsylvania, awarded the whole balance of the fund to the bondholders.

The First National Bank of Conneautville and others, general creditors, filed exceptions to the master's report, complaining in substance that the master erred:

1. In not awarding payment in full of the claims of the exceptants.[1]

2. In awarding the fund to the bondholders.[2]

3. In excluding the claims of the exceptants from the distribution.[3]

Arguments.

4. "In his conclusions as to matters of fact." [4]

5. "In his conclusions of law." [5]

The Pennsylvania Railroad Company filed exceptions to the action of the master in rejecting the exceptant's claim upon the interest coupons held by it.

After argument, the court, MEHARD, P. J., dismissed all the exceptions, confirmed the report of the master absolutely, and entered a formal decree of distribution in accordance with said report.

Thereupon the First National Bank of Conneautville and others took this appeal, assigning for error:

1-5. The dismissal of the appellants' exceptions.[1 to 5]

*Mr. J. Ross Thompson* (with him *Mr. John P. Vincent*), for the appellants:

1. The controversy heretofore had in this court, respecting the lien of the mortgage, was between only two parties, the mortgage trustee and Reed, the contractor. It did not determine the right of the present appellants to contest the validity of the mortgage. Moreover, the court below, in refusing to the appellants leave to intervene before the sale, preserved by its order all their rights in the premises. The provisions of § 8, act of April 4, 1868, P. L. 62, were intended as a limitation of power, and to prohibit a mortgage exceeding in amount twice the capital stock paid up. To hold otherwise would be to make the act nugatory. A mortgage made in contravention of a constitutional or legislative prohibition, cannot create a valid lien.

2. These bonds were issued in direct violation of law, and for that reason the mortgage given to secure them cannot be enforced. The fact that they may be in the hands of bona fide purchasers, will not validate the lien; if it could, the provisions of article XVI., § 7 of the constitution, § 8, act of April 4, 1868, P. L. 62, and the act of March 13, 1873, P. L. 45, would be of little avail: Millerstown Bor. v. Frederick, 114 Pa. 435, distinguishing Kerr v. Corry, 105 Pa. 282. This court has declared this very mortgage a violation of law: Reed's App., 122 Pa. 565. That being so, the bondholders, at most would be general creditors, without preference or priority

of lien.   The proceeds of the sale of an insolvent corporation's franchises must be distributed pro rata among creditors: Bayard's App., 72 Pa. 453; Hopkins's App., 90 Pa. 69.

3. But, not only are the bondholders unprotected by the mortgage, their bonds themselves are null and void.   By § 8, act of April 4, 1868, P. L. 62, and act of March 13, 1873, P. L. 45, the legislature placed a limit upon the power to issue bonds, as well as upon the power to give a mortgage, and these bonds, being clearly beyond the power granted by the legislature, are invalid.   In Reed's App., 122 Pa. 565, Mr. Justice GREEN, speaking of the bonds in question, says that their validity " might be questionable to say the least."   The issue is an entire and indivisible transaction, and though only a part of the bonded indebtedness is beyond the limit prescribed, the whole issue is invalid: Millerstown Bor. v. Frederick, 114 Pa. 435.

4. Moreover, this bonded indebtedness was fictitious, within the meaning of § 7, article XVI. of the constitution.   There was nothing tangible to base it on.   It was a fiction as to a railroad.   There was no road, no right of way, no superstructure, no stock, nothing but a charter on paper, under which a road might or might not be built.   There was nothing to prevent the officers of the company from pocketing the money received for the bonds, without building the road at all.   It makes no difference that the money was in fact afterwards used in constructing the road.   The question is whether the debt was fictitious when the bonds were made, as their status was fixed at that time, and if invalid then they must so remain.

*Mr. Johns McCleave* and *Mr. George Shiras, Jr.*, (with them *Mr. A. F. Henlein*,) for the appellees:

1. The appellants cannot claim the money arising from the sale, on the ground that the mortgage is void.   If that is so, then the sale is void, and the purchase money should be returned to the purchasers, who bought on the faith of a decree of this court.   But the decree adjudging the mortgage to be valid and directing the sale to be made under it, stands unreversed and cannot be impeached by the appellants.   It has often been decided that the decree, under which a fund for distribution arose, is conclusive upon the auditor who distrib-

utes it : McElrath v. Railroad Co., 68 Pa. 37 ; Lennig's App., 93 Pa. 307 ; Butterfield's App., 77 Pa. 200 ; Dougherty's Est., 9 W. & S. 189; Dickerson's App., 7 Pa. 255 ; Thompson's App., 57 Pa. 175 ; Clark v. Douglass, 62 Pa. 408. The fact that the appellants were not named as parties to the bill, does not affect this rule. General creditors have no right to intervene in foreclosure proceedings, and are bound by the decree against their debtor ; the mortgagor represents them : Stout v. Lye, 103 U. S. 66; Bronson v. Railroad Co., 2 Black 524 ; Candee v. Lord, 2 N. Y. 269 (51 Am. Dec. 294) ; Herring v. Railroad Co., 105 N. Y. 340.

2. The appellants all became creditors of the company after the mortgage was given and the bonds were issued. They cannot complain of executed contracts made before they were creditors : Monroe v. Smith, 79 Pa. 459 ; Snyder v. Christ, 39 Pa. 499 ; Greenfield's Est., 14 Pa. 489 ; Mateer v. Hissim, 3 P. & W. 160 ; Porter v. Bessemer Co., 120 U. S. 637 ; Graham v. Railroad Co., 102 U. S. 148. The mortgage could not be in fraud of their rights, as they had none when it was made. The utmost they could do would be to assert against us the rights of the corporation ; but these have been already adjudged. The corporation, however, has no right to question the validity of the mortgage, having received and still keeping the money derived from the negotiation of the bonds, and its obligations having passed into the hands of innocent parties : Columbia N. Bank's App., 16 W. N. 357 ; Oil Creek etc. R. Co. v. Transportation Co., 83 Pa. 166 ; Wright v. Pipe Line Co., 101 Pa. 204 ; Goundie v. Water Works Co., 7 Pa. 233 ; Grant v. Coal Co., 80 Pa. 208 ; National Bank v. Matthews, 98 U. S. 621 ; Ossipee etc. Mfg. Co. v. Canney, 54 N. H. 295 ; Veeder v. Nudgett, 95 N. Y. 295 ; Stutts v. Handley, 41 Fed. R. 531 ; McHose v. Wheeler, 45 Pa. 32 ; Taylor on Corporations, §§ 127, 204, 205, 286, 329 ; Manhattan H. Co. v. Phalen, 128 Pa. 110.

3. The statute under which these bonds were issued was not a denial or prohibition of power. It gave power, making its exercise, and the extent to which it should be exercised, dependent upon the existence or non-existence of certain facts or conditions in the internal management of the corporation. As to such conditions, the purchasers of bonds had the right to rely on the representations of the corporation, and the very exer-

Opinion of the Court.

cise of the power to issue the bonds was a representation that all conditions making its exercise lawful existed: Moultrie Co. v. Fairfield, 105 U. S. 370; Wilson v. Salamanca, 99 U. S. 499; Cromwell v. Sac Co., 96 U. S. 51; Venice v. Murdock, 92 U. S. 494; Chamberlain v. Railroad Co., 92 U. S. 299; Marcy v. Oswego Tp., 92 U. S. 637; Gelpcke v. Dubuque, 1 Wall. 175; Monument N. Bank v. Globe Works, 101 Mass. 57; Soc. for Savings v. London, 29 Conn. 174; Railroad Co. v. Evansville, 15 Ind. 395; Knox Co. v. Nichols, 14 Ohio 260; Hays v. Gas Co., 29 Ohio 330; Bissell v. Railroad Co., 22 N. Y. 289. This case is governed by Kerr v. Corry, 105 Pa. 282. And Crocker, as the assignee of Reed, stood in his shoes and was bound by the equities between Reed and the bondholders, which have been already adjudicated.

OPINION, MR. JUSTICE WILLIAMS:

The fund for distribution in this case was raised by a sale of the franchises, roadbed, and other property of the West. Penn. & Shenango Connecting Railroad Company. The sale was made under a decree of the court below in a proceeding begun by the Fidelity Insurance, Trust & Safe-Deposit Company, the trustee named in the mortgage or trust deed given by the railroad company to secure its bonds, for the foreclosure of the mortgage and the sale of the mortgaged property. By the terms of the decree, the sale divested all liens, and passed an unencumbered title to the purchaser. The proceeds are claimed by the bondholders, and are insufficient to pay them. The appellants are general creditors and claim the right to a pro rata share in the fund. It appears that the railroad company had an authorized capital of five hundred thousand dollars, all of which had been subscribed, but only twelve thousand of which had been paid. Its right to borrow money on the security of a mortgage of its franchises, was limited by law, in the clearest manner, to twice the amount of its paid-up capital. The directors, utterly disregarding the law and their own official duty, authorized a loan of four hundred thousand dollars, and executed a mortgage on the franchises of the company and its unbuilt line of road to secure bonds for that sum. The bonds were issued, negotiated, and are held or represented by the appellees. The position of the general creditors is, that, be-

cause the mortgage was unauthorized it is not a lien, and, as evidence of indebtedness, is of no higher grade than the notes or other securities held by themselves. This raises one question.

It must be conceded at the outset that the mortgage was unauthorized, and might be held to be inoperative and void if proper parties were before us. This court expressed its opinion upon the conduct of the directors of this road in Reed's App., 122 Pa. 565, and characterized it as a "clear and highly reprehensible violation of law." The language is none too strong. The remedy is for the law-makers, and it is to be hoped that punishments will be provided for the directors who authorize, and the officers who execute, such mortgages, and for the financial agents who negotiate the bonds so unlawfully issued, of sufficient severity to protect an innocent and confiding public against the repetition of such gross and shameless frauds. But none of the guilty parties are before us. Their victims, the holders of the bonds, are the claimants, and we are to consider their rights in the premises. If this contest were between them and the company, it is plain that the company could not be heard to allege its fraud as a defence against those whom it had defrauded. By making the mortgage and negotiating the bonds, it represented to the public that its paid-up capital was sufficiently large to authorize the loan. It would be estopped from denying the truth of that representation now, when called upon to pay the bonds so negotiated. It cannot keep the money which it secured as the price of the bonds, and defend against their payment on the plea of ultra vires. If a stockholder or other party interested had asked it, the court would have enjoined against the execution of the mortgage, or the negotiation of the bonds, or the use of the money received for them ; but no one asked it.

The fraud was carried out without interruption, and the money obtained by means of it is gone. The company is insolvent. The property pledged for the payment of this unauthorized loan has been sold, and its proceeds are before us. Who is entitled to take them? As between the bondholders and the company, the mortgage was a lien on the property, and is now a lien on the proceeds. This was held in Reed's Appeal, supra. Such being the fact, the bondholders are entitled to the money as against the company and all persons

Opinion of the Court.

holding under it with notice of their position. The mortgage was authorized, executed, and recorded, and the negotiation of the bonds was in progress, when the appellants gave the credits on which their claim is based. They had full notice of the mortgage, and must be regarded as electing to give credit subject to the mortgage. The decree of the court below left them in no worse position than that which they voluntarily assumed, and they have no right to ask us to place them in a better one. The question before us is thus seen to be, not one of the power of the company to execute such a mortgage, but of the right of the company and those standing in the same position, or deriving rights from it with full notice, to set up its fraud as a defence against the victims of that fraud.

The constitutional provision relied on is not applicable. The debt is not fictitious, though the securities may turn out to be largely so.

The position of the Pennsylvania Railroad as a holder of interest coupons is not different from that of any other creditor whose advances were made with full notice of the mortgage. The West. Penn. & Shenango Connecting Railroad Company defrauded its bondholders, when it sold them bonds that rested on no real security and were issued without the authority of law; but it could not diminish the value of such securities as were pledged, by a private arrangement that coupons paid in accordance with their terms should be treated as unpaid, and that parties advancing the money, with which to pay them, should be treated as original holders and be allowed to share in the proceeds of the mortgaged property equally with the holders of the bonds. The bondholders are the only parties who could make such an arrangement, and they have not been consulted.

The judgment is affirmed.