## Shellenberger *v.* Altoona & Philipsburg Connecting Railroad Company et al., Appellants.

*Corporations—Railroads—Bonds—Fraud—Act of May 7, 1887, P. L. 94, sec. 3.*

The presumption is that holders of negotiable railway bonds are bona fide holders for value, but if fraud in the inception of the bonds is shown, the holder, to be entitled to protection as a bona fide holder, must show that he is such; his mere possession of the bonds is insufficient.

Where bonds of a corporation have been illegally issued and have been pledged for a debt, the amount of which is much less than the face value of the bonds, stockholders of the corporation who have knowledge of the illegality of the bonds, and the circumstances under which they were pledged, cannot, after they have purchased the bonds from the pledgee for substantially the amount required for their redemption, recover from the corporation more than the amount thus paid.

*Equity—Equity practice—Multifariousness—Demurrer—Answer.*

Objection that a bill in equity is multifarious must be raised by demurrer before answer filed.

Argued April 17, 1905.   Appeal, No. 166, Jan. T., 1904, by

defendants, from decree of C. P. Clearfield Co., Sept. T., 1903, No. 5, on bill in equity in case of W. L. Shellenberger et al. v. Altoona & Philipsburg Connecting Railroad Company, The Union Trust Company (now intervening plaintiff), The Philipsburg, Johnstown, Ebensburg & Eastern Railroad ,Company, The New York & Pittsburg Central Railroad, and Samuel P. Langdon. Before DEAN, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Bill in equity to foreclose a mortgage. Before LOVE, P. J.

The court's findings of fact and conclusions of law were in part as follows :

We find that the Altoona & Philipsburg Connecting Railroad Company was duly incorporated and organized July 11, 1892. That it executed its mortgage in due form of law, June 1, 1893, to secure the bonds of the said company in the sum of $400,000, said bonds being of the denomination of $1,000 each. That said mortgage was executed and delivered to the Union Trust Company, of the city of Philadelphia, as trustee. That said Union Trust Company assumed the trust at once and duly certified 330 of said bonds and delivered 299 of them to the said railroad company, or its president and manager, at that time Samuel P. Langdon. That the said mortgage is a first lien upon said railroad, its franchises, rolling stock, cars and equipments, as described therein, and that it also pledges the net resources and income derived from the operation thereof to the payment of said bonds and interest thereon as the same mature. In case of default in payment of interest for a period of six months, then, upon the request of one half the holders of the bonds outstanding and unpaid, upon written notice to said railroad company, the principal and interest of all bonds intended to be secured by said mortgage shall become due and payable. That fifteen of the said bonds were sold to the following named holders thereof: One to W. L. Shellenberger, four to W. S. Lee, two to S. J. Westley, one to W. J. Heinsling, five to John Loudon estate and three to Wm. Loudon estate, who are the present holders and owners thereof. Thirty-one of the bonds are held as security for certain advances and liabilities incurred on behalf of said Altoona & Philipsburg Connecting Railroad Company by the said Union

Trust Company, the cash balance due being a debt due the trust company of $175 and a probable liability of $5,500.

Two hundred and seven of said bonds, together with most of the stock of said railroad company, had been placed as collateral, with certain notes, in the hands of George Philler, who had advanced large sums of money thereon. The notes were not paid, and Samuel P. Langdon, who had placed the bonds as collateral, was duly notified by Mr. Philler that he would sell the bonds, under the collateral agreement, and he did sell, through Hon. D. L. Krebs, who conducted the negotiations, the 207 bonds to O. L. Schoonover, Charles G. Avery, John G. Platt, James A. Passmore and C. H. Rowland, for a valuable consideration, who are the present holders and owners of the same.

Thirty-four of the bonds which have been held by Levis & Company were sold at public auction and bought in for said O. L. Schoonover, Chas. G. Avery, John G. Platt, James A. Passmore and C. H. Rowland, who are the present holders and owners of 241 of said mortgage bonds.

That the said Altoona and Philipsburg Connecting Railroad Company and its assigns have defaulted in the payment of the interest due on said bonds for a period of more than six months, and that the holders of more than one half of the bonds outstanding and unpaid, and secured by said mortgage, requested the Union Trust Company, trustee in said mortgage, to proceed to enforce the payment of said interest and bonds. The other forty-three of the 299 bonds delivered over to Samuel P. Langdon, then president of the Altoona & Philipsburg Connecting Railroad Company, would seem yet to be in his possession or that of the company, there being no evidence that they are outstanding in the hands of third parties.

### THE LAW OF THE CASE.

The answer and the first request of defendants is that the bill should be dismissed because it is multifarious, as to parties defendant and subject-matter. The bill involves but one subject-matter or a single transaction—the rights of the bondholders and the mortgage trustee to enforce the payment of the bonds and interest due under the conditions and provisions of the mortgage.

The mortgage being a first lien upon the property, real and personal, and the franchises of the Altoona & Philipsburg Connecting Railroad Company, and which also by its provisions pledges the net income and revenues of said railroad to the payment of the interest, anyone operating said railroad and being in possession thereof, does so subject to the provisions of the mortgage. Especially is it so in this case, because as soon, or a short time after the road was constructed and equipped, it was leased to Samuel P. Langdon, who almost immediately assigned the lease to the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company. By the terms of the lease the lessee was to apply the net income and revenues of the railroad to the payment of the interest upon $325,000 of the bonds as provided for in the mortgage. The lessee therefore became a party to said mortgage, to the extent of the liability assumed.

It is true the answer in paragraph six, admits the lease to the Pittsburg, Johnstown, Ebensburg and Eastern Railroad Company, but avers that the lease was cancelled July 6, 1899, and that the lease is not in force since then. There was no proof offered in support of this averment. Yet, in paragraph seven of the answer, it avers that there was read at the sale of the thirty-four bonds by Levis & Company a notice by the Pittsburg, Johnstown, Ebensburg and Eastern Railroad Company, that said company was a creditor of the Altoona, Philipsburg Connecting Railroad Company, " and is in possession of the said railroad."

Which averment is to be relied upon? If not in possession under the lease, under what right or authority is it in possession? It being in possession and operating the road was a proper party defendant. We do not think the bill is multifarious as to subject-matter or parties defendant; to take advantage of a bill being multifarious it should be done by demurring to the bill before answer filed and before the day of trial: Persch v. Quiggle, 57 Pa. 247. The principal question involved is whether the Union Trust Company, trustee and the present holders and owners of the bonds in question, are entitled to a decree for the payment thereof. The principal defense set up, is that the mortgage and bonds issued by the Altoona and Philipsburg Connecting Railroad Company are void, because

issued in violation of the provisions of the Act of May 7, 1887, P. L. 94.

The tenth paragraph of the answer avers that the railroad and appurtenances of all kinds cost approximately $640,000. That a portion of this money was raised by the Altoona and Philipsburg Railroad Company by using its said bonds as collateral. That it obtained from Samuel P. Langdon, $27,086.99, and from Samuel P. Langdon, trustee, approximately $493,261.48.

The defendants offered the deposition of Mr. George Philler, who testified that 207 of the bonds and most of the capital stock of said railroad company were pledged by Samuel P. Langdon, as collateral on certain demand notes to him, for large sums of money advanced by him thereon.

Samuel P. Langdon, as president of the road at that time, having control of nearly all the stock of the company, financed the construction, building and equipment of the same.

Whether he realized from the bonds and stock the alleged $493,261.48 that the answer avers he put into the road as trustee, does not appear in the evidence. But it might be assumed that he did. In any event from the pleadings and evidence in the cause Samuel P. Langdon was the active manager and controller of the Altoona and Philipsburg Connecting Railroad Company from its inception to the present time, whether in his own name or that of the Pittsburg, Johnstown, Ebensburg and Eastern Railroad Company, or the New York and Pittsburg Central Railroad Company. When he pledged the bonds and stock of the railroad company, to raise money for its construction, there is no allegation or scintilla of proof that the mortgage and bonds were issued in violation of law. The Union Trust Company, trustee, in the mortgage, had no such knowledge or intimation of it. It is not alleged that Mr. George Philler had any such knowledge, and there was nothing upon the mortgage or bonds, but what was apparently regular and legal.

When the notes for which the bonds were given as collateral were not paid, in accordance with the terms of the collateral agreement, then the holders of the bonds were, or became, the holders thereof bona fide, and had a right to sell them. Mr. Philler claimed to be the owner, which claim was not denied by Mr. Langdon. Mr. Philler testifies that he gave due notice to

Mr. Langdon that he would sell the bonds; that Mr. Langdon knew of the sale. That he had the right to sell them must be accepted as conclusively proven, because Mr. Langdon, the other party to the transaction, was not called to contradict Mr. Philler. And it was alleged that the collateral agreement was in writing, but it was not produced to show that its terms had been violated. Then we must conclude that when Mr. Philler sold the bonds under the collateral agreement he, as a bona fide holder, had the right to sell them and passed a good title thereto to the purchasers thereof. The same with the bonds held and sold by Levis & Company.

Can it be held that a railroad company can issue its stock and bonds, and raise money upon them, either by sale or pledging them as collateral, and use the money to build, construct and equip its road, then turn around and say that its securities are void and worthless because they were issued in violation of law? Can it be permitted to say that the securities it has pledged as collateral, and upon which it has realized the money for building its road are worthless and void so as to prevent the holder thereof from realizing a fair value therefor, and thus make use of its own turpitude to reform others? Can it keep the money realized thereon, and the property both? Surely not. The proposition is one that courts of law and equity will not countenance or approve.

It is unnecessary to cite authorities in support of a principle so well established as the one that a railroad company cannot defend against a contract of which it has received the benefit, on the ground of ultra vires and that it was void because it had no authority or right to make it. That a railroad company is not permitted to set up as a defense to its mortgage and bonds, that have passed into the hands of third parties for a valuable consideration, a violation of the provisions of the act of May 7, 1887, has been decided by the Supreme Court in the case of Reed's Appeal, 122 Pa. 565; Fidelity Ins., etc., Co. v. West Penn., etc., R. R. Co., 138 Pa. 494. The provisions of said act of 1887, cannot be invoked in a proceeding of this kind. It provides how and in what manner stockholders or others interested may proceed through the attorney general of the commonwealth, and what method must be employed: See Yetter v. Delaware Valley R. R. Co., 206 Pa. 485.

The transferee of a coupon bond is presumed to be a bona fide holder for value: Gibson v. Lenhart, Receiver, 101 Pa. 522.

We therefore are of the opinion that the mortgage and bonds secured thereby, issued by the said Altoona and Philipsburg Connecting Railroad Company to the Union Trust Company, trustee, is not void as to the plaintiffs and bondholders in this suit, but that the same is valid and is a first lien upon the property of said railroad company, real and personal, its franchise, equipment, etc., as mentioned and described in said mortgage.

The court entered the following decree:

1. That the mortgage in the bill of complaint mentioned, dated June 1, 1893, executed by the Altoona and Philipsburg Connecting Railroad Company to the Union Trust Company, trustee, is the first lien upon the railroad tolls, franchises, estates and premises and property, real and personal, therein mentioned, referred to or described, and is effectual and binding thereon; and [that the holders of the bonds secured by said mortgage, namely, O. L. Schoonover, Chas. G. Avery, John G. Platt, James A. Passmore, Charles H. Rowland, W. L. Shellenberger, W. S. Lee, S. J. Westley, W. J. Heinsling, the administrator of John Loudon and William Loudon, according to their respective holdings, are entitled to the benefit of all the rights and securities thereby conferred.] [118]

[2. That the principal of the bonds secured by said mortgage outstanding and unpaid in the hands of bona fide owners, is the sum of $256,000, and that on December 1, 1903, there were coupons on the said bonds due and

| | | |
|---|---|---|
| unpaid, . . . . . . | $110,450 | |
| Coupons matured June 1, 1904, . | 6,400 | |
| Face of bonds, . . . . | 256,000 | |
| | | |
| Total of . . . . | $372,850] [119] | |

[3. That the said Altoona and Philipsburg Connecting Railroad Company do pay to the Union Trust Company, the trustee in said mortgage, the sum of $372,850.00 on June 1, 1904.] [120]

[4. That in default of such payment being made on June 1, 1904, to the Union Trust Company, trustee in said mortgage, that the trustee do expose to public sale the said railroad, estate, premises and property, real and personal, with the franchises and appurtenances conveyed to said trustee by said mortgage, under such order and reference as to terms and conditions of sale and distribution of the proceeds thereof as shall at the expiration of said period be made by this court on the application of the said trustee; that the costs of this proceeding be paid by the Altoona and Philipsburg Connecting Railroad Company.] [121]

*Errors assigned* among others were (1) in not dismissing the bill because of multifariousness; (114) in awarding to any of the persons found to be the owners of 241 bonds any sum in excess of what they paid for them; (115) in making any award to the owners of the fifteen bonds; (118–121) portions of decree as above, quoting them.

*S. V. Wilson* and *Thomas H. Greevy*, with them *Harry Boulton*, for appellant.—If fraud is shown in the inception of the bonds the holder, to be entitled to protection, as a bona fide holder, must show that he is such; his mere possession is insufficient: Simmons v. Taylor, 38 Fed. Repr. 682; Louisville, etc., Ry. Co. v. Ohio Valley Improvement, etc., Co., 57 Fed. Repr. 42.

If a party seeks to set aside a transaction on the ground of fraud, he must himself be free from any participation in the fraud, and on the same principle equity will not lend its aid in the harsh assertion of legal rights, and where one of several confederates to a fraudulent transaction has acquired the result of his fraud, equity will not aid the others in obtaining their share of the spoils: Gannett v. Albree, 103 Mass. 372; Farley v. St. Paul, etc., Ry. Co., 14 Fed. Repr. 114; Musselmen v. Kent, 33 Ind. 452; Hunt v. Rowland, 28 Iowa, 349; Bispham's Principles of Equity, sec. 42.

The law is imperative that the holders must pay value for the bonds, and if they do not they cannot claim protection as a bona fide purchaser: Baker v. Guarantee Trust, etc., Co., 31 Atl. Repr. 174.

*D. L. Krebs* and *W. S. Hammond*, with them *J. B. McEnally* and *A. L. Cole*, for appellee.—The bill is not multifarious, nor was the objection made in time, even if it was : Ward v. Cooke, 5 Mad. 122 ; Oliver v. Piatt, 44 U. S. 333–412; Persh v. Quiggle, 57 Pa. 247.

The defendant cannot attack the validity of the mortgage : Reed's App., 122 Pa. 565; Fidelity Ins., etc., Co. v. R. R. Co., 138 Pa. 494 ; Woodbury v. Allegheny, etc., R. R. Co., 72 Fed. Repr. 371 ; Manhattan Hardware Co. v. Roland, 128 Pa. 119 ; Manhattan Hardware Co. v. Phalen, 128 Pa. 110 ; Wood v. Corry Water-Works Co., 44 Fed. Repr. 146 ; Watts's App., 78 Pa. 370, 394.

The defendant's claim is without merit on the facts on every contention presented : McElrath v. R. R. Co., 55 Pa. 189 ; Wade v. R. R. Co., 149 U. S. 327 (13 Sup. Ct. Repr. 892) ; Moore v. Baird, 30 Pa. 138 ; Cromwell v. Sac County, 96 U. S. 51 ; Railway Co. v. Sprague, 103 U. S. 756 ; Thompson v. Perrine, 106 U. S. 589 (1 Sup. Ct. Repr. 564) ; Morgan v. United States, 113 U. S. 476 (5 Sup. Ct. Repr. 588).

A corporation cannot take the benefit of a loan and then refuse to pay it, on the plea that it had no power to borrow the money : Jones v. National Bldg. Assn., 94 Pa. 215; Manufacturers', etc., Saving & Loan Co. v. Conover, 5 Phila. 18 ; Railroad Co. v. Schutte, 103 U. S. 118–144 ; Allen v. Dallas, etc., R. R. Co., 3 Woods (U. S.), 316.

Possession is prima facie evidence of ownership : Carr v. LeFevre, 27 Pa. 413 ; Rice v. Southern Penn. Iron & R. R. Co., 9 Phila. 294.

The rule, that the holder of the bonds who had purchased them for value, is entitled to recover the whole amount, irrespective of what he paid for them, applies in favor of a purchaser who has bought at a pledgee's sale : Wade v. Chicago, etc., R. R. Co., 149 U. S. 327 (13 Sup. Ct. Repr. 892) ; Morris Canal & Banking Co. v. Lewis, 12 N. J. Eq. 323.

OPINION BY MR. JUSTICE POTTER, June 22, 1905 :

On June 1, 1893, the Altoona and Philipsburg Connecting Railroad Company executed and delivered to the Union Trust Company of Philadelphia, trustee, a mortgage upon all of its property and franchises to secure bonds of the company in the

sum of $400,000, said bonds being of the par value of $1,000 each.   The trustee certified 330 of the bonds of which 299 were delivered to the president of the railroad company, Samuel P. Langdon.   One of these bonds was sold to W. L. Shellenberger, four to W. S. Lee, two to S. J. Westley, one to W. J. Heinsling, five to John Loudon and two to William Loudon, in all fifteen.   Two hundred and seven of the bonds were pledged as collateral for a loan to George Philler of Philadelphia and were sold by him, after due notice, to O. L. Schoonover, Charles S. Avery, John G. Platt, James A. Passmore, and C. H. Rowland.   Thirty-four bonds were pledged to Levis & Company and sold by them at public sale, when they were purchased by the same parties, making their total holding 241 bonds.   The trustee held thirty-one bonds as security for certain advances and liability incurred on account of the railroad company, and the balance of the bonds apparently were not negotiated.

On August 20, 1903, the holders of the fifteen bonds filed a bill in equity against the railroad company, the Union Trust Company, the Pittsburg, Johnstown, Ebensburg and Eastern Railroad Company, the New York and Pittsburg Central Railroad, lessees of the Altoona, etc., Company, and Samuel P. Langdon, alleging default in the payment of interest on the bonds and the insolvency of the company, and praying for a decree of foreclosure and the appointment of a receiver for the railroad.   On September 13, 1903, the court appointed a receiver, but this decree was appealed from and superseded.   On December 17, 1903, upon its own petition, the Union Trust Company, trustee, was permitted to withdraw the answer it had filed and to intervene as a party plaintiff.

Defense to the bill was made in behalf of the railroad company upon three grounds : (1) that the bill was multifarious; (2) that under the Act of May 7, 1887, P. L. 94, sec. 3, the issue of bonds was void and of no effect and therefore neither the bondholders nor the trustee had any standing to maintain this action; and (3) that the holders of these bonds had purchased them with full knowledge of the fact that they had been illegally issued and were only pledged as collateral and had paid for them a sum much less than the face value.

The court below held that the bill was not multifarious and

even if it had been, the objection should have been raised by demurrer before answer filed, citing Persch v. Quiggle, 57 Pa. 247. This forms the subject of the first assignment of error, but appellants do not press it in their argument.

Many of the assignments of error are not in accordance with our rules, and are open to the objection suggested by the appellees. But the appellants have met these objections in part at least by filing additional assignments, and among these are a sufficient number to properly raise the questions of importance in this appeal.

Upon the second ground of defense it was contended that under sec. 3, of the act of 1887, the bonds were void because at the time of their issue the amount subscribed for capital stock had not been fully paid. The fact of the nonpayment of the stock was conceded, but the court held that the railroad company, having received the benefit of the sale of the bonds, could not defend against its contract on the ground of ultra vires. Citing Reed's App., 122 Pa. 565, and Fidelity Ins., etc., Co. v. R. R. Co., 138 Pa. 494. This was undoubtedly true to the extent to which the railroad company actually received the proceeds of the bonds. But it was shown that 207 bonds held by O. L. Shoonover et al., were purchased from George Philler for $62,250, and the thirty-four from Levis & Company for $10,300. Defendant offered to show that at the time of the purchase of these bonds, the purchasers were stockholders of the railroad company and had full knowledge of the fact that the bonds were illegally issued and also that the parties from whom they purchased were not absolute owners of the bonds, but that the company held an equity of redemption in them. The court excluded the testimony, which is the subject of a number of the assignments of error. In the final decree of the court below, the purchasers named above were adjudged to be bona fide holders of the bonds for their face value, $256,000, with accrued interest, $116,850, making a total of $372,850 due upon the mortgage.

We think the trial court was mistaken in the position it took in this respect. If the defendant could show that these bondholders were not bona fide holders for value, it was entitled to do so. "The presumption is, that holders of negotiable railway bonds are bona fide holders for value, but if fraud in the

inception of the bonds is shown, the holder, to be entitled to protection as a bona fide holder, must show that he is such; his mere possession of the bonds is insufficient:" 23 Am. & Eng. Ency. of Law, 838.

" The doctrine which validates securities within the apparent powers of the corporation, but improperly and therefore illegally issued, applies only in favor of bona fide holders for value. A person who takes such a security with knowledge that the conditions on which alone the security was authorized were not fulfilled, is not protected, and in his hands the security is invalid; though the imperfection is in some matter relating to the internal affairs of the corporation, which would be unavailable against a bona fide holder of the same security:" Hackensack Water Co. v. DeKay, 36 N. J. Eq. 548, where an elaborate discussion of the authorities is to be found.

In the present case, the court below quotes from the syllabus in Gibson v. Lenhart, 101 Pa. 522, that " the transferee of a coupon bond is presumed to be a bona fide holder for value." But the language of Justice STERRETT in the opinion in that case is (pp. 527, 528) : " The last taker is presumed to be a bona fide holder for value and may maintain his possession against everybody until the contrary be successfully established by those who undertake to assail his possession."

The rule to be applied in such cases has been thus stated in the federal courts. The question of the validity of railroad bonds is to be determined by the well-established rule that " if fraud or illegality in the inception of negotiable paper is shown, an indorsee, before he can recover, must prove that he is a holder for value. The mere possession of the paper under such circumstances is not enough:" Simmons v. Taylor, 38 Fed. Repr. 682.

We are of opinion that the testimony tending to show that the present holders were not bona fide holders for value without notice, should have been admitted; and, if it be established that they were not such, then the amount of the recovery should be limited to the actual amount expended in the purchase of the bonds, with interest thereon. The equity of this course will be especially manifest, if the proof sustains the averments of the answer, that the holders of these bonds purchased them with knowledge of the irregularity of the issue, and that they

had only been pledged as collateral, and that the sum paid for them was substantially the amount required for their redemption.

The assignments of error numbered 114, 115, 118, 119, 120 and 121, are sustained.

The decree of the court below is reversed, and the costs of this appeal are to be paid by the appellees. And it is ordered that the record be remitted to the court below for further proceedings in accordance with this opinion.